421 A.2d 1178

**COMMONWEALTH of Pennsylvania,**

v.

**John J. PATTERSON, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1980.

Filed Sept. 5, 1980.

Petition for Allowance of Appeal Denied Jan. 6, 1981.

Ronald D. Ashby, Media, for appellant.

Jean Marie Cella, Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence imposed after a jury convicted appellant of possession of controlled substances [1] and possession with intent to deliver.[2]

The trial was on January 9, 1979. Appellant argues that the lower court abused its discretion when it refused his request to continue the trial so that he could obtain the notes of testimony at the suppression hearing, which had been held on January 4, 1979.[3] Since we agree with appel-

1. 35 P.S. § 780–113 (16) (Purdon's 1977).

2. 35 P.S. § 780–113 (30) (Purdon's 1977).

3. Contrary to the Commonwealth's argument, appellant has not waived this issue. Appellant states in his brief that he requested the

lant, we do not reach the other arguments he has raised on this appeal.[4]

The Commonwealth's evidence at the trial may be summarized as follows.

At approximately 11:30 A.M. on October 20, 1978, one Joseph Baldwin security manager at the Sun Shipbuilding and Dry Dock Company, received a telephone call concerning a suspicious vehicle parked outside the company parking lot. As a result of the telephone call, one Nathaniel Reedy, a security officer, was sent to the parking lot. Reedy observed a blue and white pickup truck parked on the street adjacent to the parking lot. N.T. at 15–16 (January 9, 1979). A blue van drove up and the driver of the van walked up to appellant, who was sitting in the driver's seat of the pickup truck. Reedy testified that he observed something being exchanged between appellant and the driver of the van. N.T. at 16 (January 9, 1979). Reedy returned to the security office and Baldwin called the Chester Police. N.T. at 23–24 (January 9, 1979). At approximately 11:45, Officers Fennell and Gretsky of the Chester Police arrived at the scene. Fennell testified that he and Gretsky approached the pickup truck, with Fennell on the driver's side and Gretsky on the passenger's side. N.T. at 53 (January 9, 1979). Fennell knocked on the window of the driver's side and asked appellant for identification. N.T. at 53 (January 9, 1979). Appellant produced a wallet and handed his driver's license to Fennell. N.T. at 53–54, 98 (January 9, 1979). Appellant reached into his glove compartment to recover his owner's card which he was unable to find. N.T. at 54 (January 9, 1979). As appellant was opening the glove compartment, Fennell ordered him out of the truck. N.T. at 54 (January 9, 1979). Fennell observed plastic bags protruding from appellant's left coat pocket, which Fennell believed contained

continuance at the call of the list, and the lower court's opinion on appellant's post–verdict motions confirms this by referring to a request being made. At 1179. Moreover, appellant properly raised this issue in post–verdict motions and on appeal before us.

4. Appellant also argues that the police officers' search of him was illegal, and that they lacked probable cause to arrest him.

marijuana. Appellant was placed under arrest and the plastic bags were confiscated. Subsequent chemical analysis revealed that the substances confiscated were 329.6 grams of marijuana and 27.4 grams of hashish.

The testimony at the suppression hearing, which, as mentioned above, was only five days before the trial, was inconsistent with the testimony at the trial in several respects. Reedy testified at trial that he had not seen appellant prior to the incident, while at the suppression hearing he testified that he knew appellant "by sight," though not by name. N.T. at 6 (Suppression Hearing, January 4, 1979). While Fennell testified at trial that he had approached the driver's side of the pickup truck and asked appellant to produce identification, Gretsky testified at the suppression hearing that it was he who had approached appellant and asked him to produce his driver's license and owner's card. N.T. at 16 (Suppression Hearing, January 4, 1979). Further, while Fennell testified at trial that appellant handed him his driver's license, Gretsky testified at the suppression hearing that it was he to whom appellant handed his driver's license. N.T. at 31 (Suppression Hearing, January 4, 1979).

Appellant's counsel's inability at trial to refer to the notes of testimony at the suppression hearing rendered futile his attempt to impeach Fennell. Thus, the cross-examination of Fennell went as follows:

Q: Did Mr. Patterson hand you the driver's license or hand your partner the driver's license.

A: He handed me the driver's license.

Q: If I told you that your partner testified that he handed it to him, would I be correct?

A: No, I don't believe so.

Q: I would be wrong?

A: I think you would be.

Q: If your partner said he received the driver's license, he would be wrong?

A: I would say.

N.T. at 98 (January 9, 1979).

When the Commonwealth did not call Gretsky to testify at trial, appellant's counsel called him. Again, however, counsel's inability to refer to the notes of testimony of the suppression hearing rendered futile his attempt at impeachment. Thus, the cross–examination of Gretsky went as follows:

Q: Who asked Mr. Patterson–you asked Mr. Patterson to give you the driver's license, didn't you?

A: I believe I did.

Q: And Mr. Patterson gave it to you, didn't he?

A: I thought he did, yes, sir.

Q: Well, did he or didn't he?

A: I am–I believe he did.

Q: All right. You were in the court room this morning when your partner testified?

A: Yes, sir.

Q: And he stated that he asked Mr. Patterson for the driver's license, and he gave it to him?

A: Yes, sir.

Q: Now is he correct?

A: He could be, but I don't know if–the defendant gave me the driver's license or maybe my partner had given me the driver's license. I thought the defendant had given them to me.

. . . . .

Q: When you walked up to the truck, did you walk up to the truck and tell Mr. Patterson to exit the vehicle?

A: Yes, we did.

Q: I didn't say we. Didn't you? Didn't you? Didn't you testify in this manner, in the hearing prior to today, that you walked up to the truck, and you said to Mr. Patterson exit the vehicle?

A: I am not sure if I said I did or I said we did. I know he was asked to step from the truck. I may have done it or my partner may have done it.

N.T. at 139, 141 (January 9, 1979).

In *Commonwealth v. Waters,* 276 Pa.Super. 584, 419 A.2d 612 (1980), this court stated:

"It is well settled that the grant of a continuance rests within the sound discretion of the trial court and that the decision to deny the continuance will not be reversed unless a clear abuse of discretion is shown." *Commonwealth v. Hughes,* 264 Pa.Super. 118, 126, 399 A.2d 694, 698 (1979). Moreover, an appellate court will not find an abuse of discretion if the denial of the continuance did not prejudice appellant. *See, e. g., Commonwealth v. McKelvie,* 471 Pa. 541, 370 A.2d 1155 (1977); *Commonwealth v. Kishbach,* 247 Pa.Super. 557, 373 A.2d 118 (1976).

Here, the denial of appellant's request for a continuance was a clear abuse of discretion. The request was appellant's first request for a continuance, and it was made promptly; there is no suggestion of bad faith or of any attempt to avoid or delay the trial. The denial of the request prejudiced appellant by effectively denying his counsel the ability to impeach the Commonwealth's principal witnesses. *Cf. Commonwealth v. Glover,* 265 Pa.Super. 19, 401 A.2d 779 (1979) (denial of continuance upheld because no prejudice where counsel, in cross–examining Commonwealth witnesses, had and used notes of testimony of suppression hearing). Finally, to uphold the denial would represent an unfortunate precedent, for it would suggest that whenever, as here, a case is listed for trial almost immediately after the suppression hearing, a defense request for continuance could properly be denied, even though that denial might effectively prevent the impeachment of the Commonwealth's witnesses.

The judgment of sentence is reversed and the case is remanded for a new trial.

VAN der VOORT, J., files a dissenting opinion.

128

VAN der VOORT, Judge, dissenting:

I respectfully dissent to the Opinion of the Majority of the Panel in this case. The Majority would reverse and grant a new trial because the trial judge would not grant the appellant a continuance because appellant wanted a transcript of the testimony taken at the suppression hearing five days before the start of this case.

Counsel for appellant claimed that each of two police officers testified that when appellant was requested to produce his driver's license that the appellant did produce it and gave it to the officer who was testifying. He further claims that when one of the police officers testified about walking up to the appellant's truck in order to require the defendant to step from the truck, the officer wasn't clear whether he asked the appellant or whether his partner did it. Counsel claims that he was unable to impeach the officers testimony in these respects.

The matters involved are wholly trivial and inconsequential, there being no doubt that the driver's license was handed to one or the other of the officers and there is no contention that the appellant did not exit his vehicle. There is also no claim that the reporter who took the notes of testimony was not available to testify as to what the witnesses at the suppression hearing had said. Were the ruling of the court below by some stretch of imagination be held to be error, such error was harmless beyond a reasonable doubt.

I would affirm the judgment of sentence of the court below.