466 A.2d 228

**COMMONWEALTH of Pennsylvania**

v.

**Joseph D. FARACI, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1983.

Filed Sept. 30, 1983.

Petition for Allowance of Appeal Denied Feb. 27, 1984.

418

Robert Melvin Hammond, Warrington, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before HESTER, POPOVICH and HOFFMAN, JJ.

HESTER, Judge:

On February 12, 1980, appellant, Joseph D. Faraci, his accomplice, Richard Marsden, Arlene Grunmeier and Janet Faraci purchased one-half ounce of methamphetamine in the City of Philadelphia. Thereafter, they purchased several items from a jewelry store before acquiring a room at the

Sheraton Motor Inn on Roosevelt Boulevard in Northeast Philadelphia.

During the evening and early the following morning, the foursome watched television, ate, drank beer and injected methamphetamine. Marsden and Grunmeier discussed a .357 Magnum handgun which they knew was located at the Ashwood Apartments situate at 53 Applecross Circle in New Britain Township, Bucks County, Pennsylvania, the residence of the teenage victim, Allen Foard, Jr., and his family.[1] Richard Marsden expressed his intention to obtain the weapon.

Grunmeier checked the foursome out of the Motor Inn in late morning, February 13, 1980. At that time, appellant and Marsden were out seeking a rental car and Janet Faraci departed earlier that morning for work. Shortly after checking out, appellant, Marsden and Grunmeier drove to appellant's apartment. There, they equipped themselves with two handguns, a sawed-off shotgun and ammunition. The trio then drove to Ashwood Apartments to act upon Marsden's intention of acquiring the .357 Magnum.

Upon arriving at the victim's apartment, appellant knocked on the front door while Marsden and Grunmeier waited in the automobile. No one answered; consequently, Marsden and Grunmeier left the vehicle and walked to the door. Marsden used the shotgun to shatter a glass panel immediately to the right of the door. They unlocked the front door, walked inside and proceeded up the steps to the second floor.

Marsden led the way and before appellant and Grunmeier reached the second floor, Marsden turned and alerted them to the fact that the victim was lying on his bed. Grunmeier, thinking the two men would abort their plans, ran downstairs.

---

1. Cory Foard, the victim's sister, informed Richard Marsden one or two months prior to the incident that the gun was located at the apartment. She offered the gun to him in return for methamphetamine or money. She also asked for Marsden's assistance in robbing her own residence. At that time, Marsden did not respond.

Instead, they remained. While she waited in the living room, Grunmeier heard Marsden order the victim to get the .357 Magnum. The victim complied, and shortly thereafter, Grunmeier heard four gunshots in rapid succession. Upon hearing the gunshots, Grunmeier ran to the automobile; appellant and Marsden joined her a few minutes later. As they drove from the scene, Marsden told Grunmeier that he killed Allen Foard, Jr.

Foard died of four gunshot wounds of the head and trunk. Appellant and Marsden were arrested two weeks following the incident and charged with murder, burglary, robbery, theft, possessing instruments of crime, prohibited offensive weapons and criminal conspiracy. Appellant and Marsden were tried separately; Grunmeier was granted immunity in return for serving as a Commonwealth witness. Janet Faraci was not charged.

Following a lengthy trial by jury in the Court of Common Pleas of Bucks County, appellant was found guilty of second-degree murder, burglary, robbery, possessing instruments of crime, prohibited offensive weapons and four counts of criminal conspiracy. He was sentenced to mandatory life imprisonment on second-degree murder and a consecutive term of imprisonment of not less than two nor more than five years on the non-homicide charges. Post-trial motions for new trial and in arrest of judgment were denied. This appeal was timely filed from the judgment of sentence.

Appellant argues first that the trial court erred in denying his request for a continuance of trial. Criminal charges were filed against appellant on February 27, 1980. On March 10, 1980, the trial court assigned the Bucks County Public Defender's Office to represent appellant; however, due to a potential Professional Code of Ethics violation, this assignment was vacated on March 11, 1980, and Robert M. Hammond, Esquire, was appointed as private counsel. Sometime thereafter, Mr. Hammond was removed from the case due to appellant's retention of private counsel.

Private counsel represented appellant at the preliminary hearing on April 16, 1980, and continued to represent him until May 2, 1980, when his services were terminated and Mr. Hammond was reappointed to represent appellant. Mr. Hammond represented appellant from that point throughout the lower court proceedings. From his second appointment on May 2, appellant's counsel was given thirteen days to file pre-trial motions and one month to prepare for trial. Trial was scheduled for June 2, 1980. According to appellant, his counsel did not have sufficient time to prepare for a trial of this complex nature as evidenced by a lengthy list of fact and expert witnesses to be used by the Commonwealth, by counsel's inability to secure the suppression notes from the omnibus motion's hearing on May 27, 1980 and the notes of testimony of Arlene Grunmeier from the Marsden proceedings.

It is beyond question that the grant of a continuance rests within the sound judgment of the trial court, and its denial of a continuance will not be reversed on appeal absent a palpable abuse of discretion. *Commonwealth v. Andrews,* 245 Pa.Super. 547, 369 A.2d 762 (1977). *Commonwealth v. Warner,* 209 Pa.Super. 215, 225 A.2d 98 (1966), cert. den. *Warner v. Pennsylvania,* 389 U.S. 986, 88 S.Ct. 477, 19 L.Ed.2d 479 (1967). It is not sufficient to point to the number of Commonwealth witnesses and conclude therefrom that preparation will be particularly lengthy. Many of the Commonwealth witnesses were subject to brief direct examination that prompted no cross-examination from defense counsel. Moreover, unlike *Commonwealth v. Patterson,* 281 Pa.Super. 122, 421 A.2d 1178 (1980), cited by appellant, there is no allegation that the notes of testimony from the suppression hearing and the Marsden proceedings would provide appellant with the means to impeach Commonwealth witnesses. In order to properly reverse for denial of a continuance, there must be more evidence of prejudice than the scheduling of a suppression hearing and co-defendant's trial shortly prior to appellant's trial. A simple allegation that more preparation is necessary for

investigation and trial preparation will not suffice in demonstrating an abuse of discretion.

Next, appellant maintains that the lower court erred in admitting into evidence the photographs of the victim's body. Over objection of appellant's counsel, photographs depicting the victim's body lying face down on his bedroom floor with his trunk and head inside the clothes closet were admitted into evidence. According to appellant, the inflammatory nature of the photographs outweighed whatever probative value they might have. Appellant believes that the graphic testimony covered every evidentiary point depicted in the photographs; therefore, the photographs were superfluous as well as prejudicial.

Similar to other demonstrative evidence, photographs are admissible if both relevant and competent. *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Batty*, 482 Pa. 173, 393 A.2d 435 (1978). Unless the trial judge abuses his discretion in admitting photographs of the victim's corpse, his decision to do so will not constitute reversible error. *Commonwealth v. Hudson*, supra; *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974).

Once photographs are proferred as evidence, the trial judge must first determine whether they are inflammatory; if not, then whether they are admissible depends entirely upon basic evidentiary rules of materiality, relevance and competency. *Commonwealth v. Hudson*, supra; *Commonwealth v. Batty*, supra. Here, the trial court impliedly found the photographs to satisfy the fundamental characteristics of admissible evidence and found them not to be prejudicial:

"I have had an opportunity to review the photos and in may judgment they are not in any way inflammatory, and they fairly and accurately depict, according to the officer's testimony, what he saw when he discovered the body. I will allow them to be exhibited to the jury. N.T. June 6, 1980, p. 652.

In the event photographs are deemed inflammatory, they are properly admissible if their evidentiary value outweighs any prejudicial effect they may have on the jury's deliberations.

■ The photographs were black and white, did not reveal macabre details and were viewed by each juror for a period not exceeding ten seconds, and in most cases for a much shorter period. We do not find them prejudicial. Moreover, they assist in depicting the room in which the deceased was killed, the position of the body and show neither his face nor wounds. Photographs of this nature have been deemed admissible. *Commonwealth v. Hudson*, supra.

It is also appellant's contention that statements made by his co-defendant, Richard Marsden, following the incident constituted hearsay and were improperly admitted as evidence.

■ Three days following the incident, appellant and Richard Marsden met with Michael Gleason at appellant's apartment. The three men were friends and Marsden informed Gleason of their breaking into the Foard apartment to find the .357 Magnum, the confrontation with Allen Foard, Jr., and the striking and shooting of Foard. Marsden then gave Gleason a duffle bag containing 25 rounds of .22 caliber shells and two holsters and instructed him to discard it. This entire conversation occurred in appellant's presence. Appellant said nothing; however, Gleason testified that appellant's demeanor was such that it was obvious that he was familiar with Marsden's account of the incident and agreed with Marsden's actions in Gleason's presence. Appellant contends that Marsden's statements were not uttered as part of the conspiracy and did not qualify as tacit admissions; therefore, the hearsay rule could not be circumvented. We agree that the conspiracy terminated at some point prior to the meeting with Marsden. The principal acts of acquiring the .357 Magnum and killing Foard occurred three days earlier. The conversation with and instructions to Gleason were acts of braggadocio and perhaps acts of "covering up." The principal objective had been accom-

plished and declarations thereafter of a co-conspirator are not admissible against others. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980); *Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972).

Conversely, we do find that Marsden's statements and appellant's silent approval thereof, qualified as tacit admissions and were therefore admissible. Where a person is implicated as a principal in the commission of a crime and is afforded an opportunity to comprehend and deny his involvement, under circumstances not consonant with an exercise of his right of silence under the 5th Amendment, and he fails to speak, the statement and his silence are admissible against him as a tacit admission of guilt. *Commonwealth v. Scarborough*, 313 Pa.Super. 521, 460 A.2d 310 (1983); *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981). This rule is based upon the timeless assumption that ordinarily innocent persons will not sit back complacently while grave and false accusations are hurled against them. *Commonwealth v. Myers*, 423 Pa. 82, 223 A.2d 296 (1966); *Commonwealth v. Bolish*, 381 Pa. 500, 113 A.2d 464 (1955).

Marsden specifically recounted the events of the incident. He discussed his, appellant's and Grunmeier's breaking into the apartment and walking up the staircase, their discovery of the victim in his bedroom, Marsden's confronting the victim in the victim's father's bedroom, the demand for the gun, the striking of the victim, the four gunshots, and general information concerning prior and subsequent events to the crimes. Appellant was present during this entire conversation and not once did he utter disapproval. In fact, Gleason observed certain nonverbal responses by appellant which indicated complete support of Marsden's account. We cannot design a more precise illustration of a tacit admission; nor did appellant's silence constitute an exercise of 5th Amendment privileges due to the fact that he was not at that time in the custody or presence of police officers. See *Commonwealth v. Hubble*,

314 Pa.Super. 99, 460 A.2d 784 (1983); *Commonwealth v. Schmidt,* 452 Pa. 185, 299 A.2d 254 (1973).

 Lastly, appellant argues that the lower court erred in sentencing him to a consecutive sentence of two to five years on the non-homicide charges prior to ordering a pre-sentence investigation and report. We agree. Pennsylvania Rule of Criminal Procedure 1403A(2) provides:

> The sentencing judge shall place on the record his reasons for dispensing with the pre-sentence investigation report if the court fails to order a pre-sentence report in any of the following instances:
>
> (a) where incarceration for one year or more is a possible disposition under the applicable sentencing statutes; or
>
> (b) where the defendant is less than twenty-one years old at the time of conviction or entry of a plea of guilty; or
>
> (c) where the defendant is a first offender in that he has not heretofore been sentenced as an adult.

For the offenses of burglary, robbery, theft, possessing instruments of crime, prohibited offensive weapons and criminal conspiracy, a period of incarceration in excess of one-year was permissible under the Sentencing Code; consequently, the protections of Rule 1403 A (2)(a) were applicable. The lower court failed to order a pre-sentence report and neglected to state its reasons on the record for dispensing with the report. For these reasons, we remand for re-sentencing on the charges of burglary, robbery, theft, possessing instruments of crime, prohibited offensive weapons and the four counts of criminal conspiracy. See *Commonwealth v. Pringle,* 304 Pa.Super. 67, 450 A.2d 103 (1982); *Commonwealth v. Weldon,* 287 Pa.Super. 533, 430 A.2d 1180 (1981). Judgment of sentence affirmed in all other aspects.

Judgment of sentence affirmed in part, reversed and remanded in part.