## COMMONWEALTH of Pennsylvania, Appellee,

v.

## Dorothy BARTLETT, Appellant.

Superior Court of Pennsylvania.

Submitted July 28, 1997.

Filed Dec. 30, 1997.

---

**3.** For a description of the term "outparcel", *see* note 1, *supra.*

Norris E. Gelman, Philadelphia, for appellant.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, BECK and BROSKY, JJ.

BECK, Judge.

In this appeal, *inter alia*, we consider *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987) and discuss whether a Commonwealth witness asserting an attorney-client privilege must always invoke the privilege in the presence of the jury. Under the facts of this case, we conclude the trial court did not err when it failed to require the Commonwealth witness to assert his attorney-client privilege in the presence of the jury. We therefore affirm.

Appellant Dorothy Bartlett was convicted of first degree murder, abuse of corpse and related offenses in the stabbing death of her husband, Odell Bartlett. The couple's son, Darren Bartlett, was the primary witness for the prosecution. At trial, Darren testified to the circumstances surrounding his father's murder and admitted his involvement. The record reflects that in the days before the murder, appellant was prohibited from entering the family home pursuant to a restraining order obtained by her husband. Darren, who had access to the house and was there to care for some pets, called his mother to inform her that his father was in the process of putting a lock on the front door. Appellant arrived shortly thereafter and Darren let her in. She went upstairs to a bedroom and began arguing with her husband. Darren walked into the room and watched as his mother stabbed his father with a butcher knife.

At his mother's request, Darren attempted to conceal the crime by cleaning the room with ammonia and disposing of the blood-soaked linens. Without bothering to ascertain whether his father was dead or alive, Darren wrapped the body in plastic, loaded it into his father's van and drove to an abandoned lot. He left the body there, hoping that authorities would think his father had been murdered by local drug addicts and prostitutes. Neighbors testified that they heard a woman screaming around the time of the murder and later saw appellant outside the residence in her car, speaking with another person.

Darren was arrested and charged in his father's death. It was only after his trial had begun and the Commonwealth's case was proceeding that he pled guilty to third degree murder. As part of his plea agreement, Darren agreed to testify against his mother in her subsequent trial for first degree murder. Appellant was found guilty of the charges, but her conviction was reversed and a new trial granted by this court due to an erroneous jury instruction. At his mother's second trial, Darren related the incidents described above. He was questioned by the prosecutor and defense counsel regarding his previous criminal trial, his plea agreement and his motive for testifying. At one point during Darren's cross-examination, counsel for appellant asked Darren the names of the witnesses he had intended to call at his own trial. The prosecutor objected and the court and counsel had an *in camera* discussion regarding the propriety of counsel's inquiry.

Defense counsel argued that under the authority of *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987), he was entitled

to continue his line of questioning regarding Darren's trial strategy. Defense counsel acknowledged that pursuant to *Sims,* Darren could refuse to answer the questions based on the attorney-client privilege. However, defense counsel insisted that Darren was required to invoke the privilege in the jury's presence. The court rejected defense counsel's argument and the issue is now before us on appeal.

In *Sims,* our supreme court reviewed the case of Bobby Sims, who had been convicted of first-degree murder and sentenced to death. At trial in that case, the Commonwealth relied on the testimony of Barry Hilton, who testified that he watched Sims shoot the victim in the back of the head at close range. Initially, Hilton was arrested for the crime, but charges against him were dismissed because the Commonwealth could not sustain its burden at the preliminary hearing. Many months later, Hilton was interviewed by police about the murder and he informed them that Sims was the trigger man. Hilton was granted immunity from prosecution in return for testifying against Sims.

Prior to trial, counsel for Sims filed a motion *in limine* requesting that he be permitted to question Hilton about his communications with his attorney during the time he faced the murder charges. In response to the motion, Hilton informed the court that he wished to assert the attorney-client privilege. The trial court ruled that counsel was prohibited from asking Hilton "any questions even touching upon his assertion of the privilege." *Id.* at 371, 521 A.2d at 393. On appeal, the supreme court held that while Hilton had a right, under the attorney-client privilege, to refuse to answer the questions, he should have been required to invoke the privilege in front of the jury.

In finding that Hilton was required to assert the privilege in the jury's presence, the court noted a number of factors, including the fact that it was a capital case and that counsel was unable to present other evidence that might have implicated Hilton in the crime.[1] Relying on the right of criminal defendants to confront witnesses who offer testimony against them, the *Sims* court held that:

> To insulate such a witness from having to invoke his privilege in the jury's presence, as did the trial court in this case, unfairly bolstered the credibility of a witness whose testimony was crucial to the success of the prosecution.... [T]he trial judge's refusal to require Hilton to invoke the privilege in the presence of the jury was an unacceptable infringement upon appellant's right of confrontation.

*Id.* at 377–78, 521 A.2d at 396.

In this case, appellant asserts that defense counsel should have been permitted to pursue the line of questioning and in the event Darren wished to invoke the attorney-client privilege, he should have been required to do so in the presence of the jury.[2] We disagree.

Appellant asks that we interpret *Sims* as holding that in all instances where the prosecution's witness has previously been accused of the crime at issue, and that witness seeks to rely on the attorney-client privilege to avoid cross-examination regarding the witness's proposed defense during the prior criminal proceeding, invocation of the privilege must occur in front of the jury. We do not read *Sims* so broadly.[3] The *Sims* court was careful to hold that the requirement of invoking the privilege in the presence of the jury was "correct under the circumstances of

---

1. Sims was prevented from presenting to the jury statements made by Hilton's neighbors, which statements tended to show that Hilton was more culpable than he claimed. The trial court found that the statements properly were precluded as hearsay.

2. In its opinion, the trial court stated that it precluded counsel's questions because there was no foundation for them, i.e., there had been no testimony that Darren intended to call any witnesses at his trial. We decline to affirm on this basis as it is clear from the record that counsel

sought to examine Darren pursuant to the holding in *Sims* and the court refused to allow it. The lack of a foundation was not discussed at the in-camera meeting between counsel and the court.

3. We observe that in *Sims,* four justices joined the majority, one of whom concurred and noted that counsel must have a "reasonable basis" upon which to pursue the line of questioning. Two justices concurred in the result and one justice dissented.

[the] case." *Id.* at 375, 521 A.2d at 395. After balancing the various factors in the case, the *Sims* court determined that informing the jury of Hilton's invocation of the privilege was appropriate and just. Some of the factors that the court considered were the possibility of the death penalty, the inadmissibility of other evidence that might have implicated Hilton, the purpose underlying the attorney-client privilege and the purposes underlying the right of confrontation.

While we recognize the factual similarities between this case and *Sims,* we likewise recognize the significant differences between the two cases. The *Sims* court's rationale was protection of Sim's sixth amendment right of confrontation. Here the facts demonstrate that appellant's right of confrontation was fully protected. In the instant case, Darren pled guilty to third degree murder in connection with his father's death and the jury was informed of this fact in detail. Further, counsel was not hampered in admitting other evidence that tended to prove Darren's culpability. Defense counsel skillfully cross-examined Darren regarding his possible motives for killing his father, as well as his self-serving reasons for pleading guilty and testifying against his mother. Counsel elicited from Darren the fact that he lied repeatedly to police prior to and after his arrest, that he would rather die than spend his life in prison and that he would do almost anything to keep himself from spending his life in jail. Defense counsel forcefully reminded the jury of all of these points in his closing statements. As noted by the trial court, "all of Darren Bartlett's warts were exposed for the jury's consideration." Trial Court Op. At 7.

The factors the court considered in *Sims,* especially the purposes underlying the appellant's sixth amendment right to confront witnesses, are not present in this case. Considering the substance and extent of the admissions made by Darren on cross-examination, it is clear that the jury was presented with ample testimony that "reasonably provided the basis for that tribunal to question the accusations made by the witness against the accused." *Sims, supra* at 376, 521 A.2d at 395. The rationale underlying *Sims* is simply not applicable to this case and therefore is not controlling.

■ Appellant's other claim is that the court erred in refusing to give a tacit admission charge to the jury. Darren testified that shortly after he was brought to police headquarters, he asked to see his mother. Appellant refused to speak with Darren when they were alone but later, in the presence of a police officer, she asked him "if he did it" and he did not respond. Based on this exchange, counsel requested a tacit admission charge.

■ Tacit admission evidence is admissible at trial due to the "age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt." *Commonwealth v. O'Kicki,* 408 Pa.Super. 518, 597 A.2d 152 (1991), *appeal denied,* 534 Pa. 637, 626 A.2d 1156 (1993) (quoting *Commonwealth v. Bolish,* 381 Pa. 500, 113 A.2d 464 (1955)).

In this case a tacit admission charge was not appropriate. Darren admitted his involvement in the death of his father. There was no need to instruct the jury that his failure to respond to his mother's accusations could be construed as an indication of guilt; he conceded his guilt.[4]

Appellant has advanced no authority for the proposition that a tacit admission charge must be given to a jury. Our research reveals no case mandating an instruction where evidence of a tacit admission is offered. Appellant relies solely on *O'Kicki* for support. However, in that case the court addressed only whether tacit admission evidence was properly presented to the jury. In finding

4. We observe that tacit admission evidence is prohibited if it constitutes "an exercise of 5th Amendment privileges due to the fact that [the person against whom it is used] was ... at that time in the custody or presence of police officers." *Commonwealth v. Faraci,* 319 Pa.Super. 416, 466 A.2d 228 (1983). The record reveals that appellant accused her son at the police station and only after an officer entered the room. The fact that the entire exchange took place at police headquarters in the presence of an officer leads us to conclude that the evidence was not admissible as a tacit admission.

that it was, the *O'Kicki* court noted the court's charge, but did not hold that the charge was required. Appellant's reliance on *O'Kicki* is misplaced.

Further, counsel requested and was granted the right to argue the point in his closing statement to the jury. Finally, upon review of the jury charge in its entirety, we conclude that the court fairly and correctly informed the jurors of their duty to ascertain the credibility of the witnesses, considering both their motives for testifying and "all other factors bearing on [their] credibility." *See Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273, 1276 (1990) (review of jury instructions includes entire charge and abuse of discretion will not be found where the law was presented sufficiently and accurately). We find no error in the court's charge to the jury.

Judgment of sentence affirmed.

BROSKY, J., filed a Concurring Opinion.

BROSKY, Judge, Concurring.

Because I see no reason to depart from the rule enunciated by our Supreme Court in *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987), I cannot join the opinion of the majority. However, since I believe the failure to allow appellant the opportunity to force the witness in question to assert the attorney-client privilege in front of the jury was harmless error in this case, I join the majority's disposition.

Although, as the majority points out, our Supreme Court prefaced its holding in *Sims* by stating that the appellant's contention was correct under the facts of "this case," the court did not provide any guidelines for when and when not the rule should apply. Further, other than in those prefatory comments highlighted by the majority, the court does not really hint that the rule would be applicable in some cases but not in others. As such, I do not fully embrace the idea that *Sims* should not apply in all cases where the situation is presented.

Furthermore, if it is true that insulating a witness from claiming the privilege in front of the jury will unfairly bolster the witness' credibility to the defendant's detriment, then I see no reason for not having a firm rule which would allow the defendant to force the witness to claim the privilege in front of the jury. Lastly, if the present case is compared and contrasted with *Sims,* I believe the members of the Bench and Bar are not provided with sufficient guidance as to when the *Sims* rule should and should not apply. Thus, we can expect additional appeals on the issue in the future.

Nevertheless, despite the above misgivings with the majority's holding, I believe that their ultimate decision can be supported. As pointed out by the majority, the witness in question was subjected to extensive and skillful cross-examination. Appellant was able to present several factors which would detract from the witness' credibility. In this particular context, I do not believe that forcing the witness to claim the attorney-client privilege would have made a difference in the jury's overall credibility decision. Thus, the failure to require the invocation of the privilege in front of the jury was, in my opinion, harmless error.