## Commonwealth *v.* Brooks, Appellant.

Argued November 25, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*John J. King,* with him *Joseph N. Corcoran,* for appellant.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 6, 1947:

A jury having found defendant, David Brooks, guilty of murder in the first degree, with penalty of death, he now appeals from the judgment and sentence imposed upon him.

The facts of the case are these. Brooks having stolen a revolver, met one Albert Wooding at about seven o'clock on the evening of December 14, 1945, and the two of them entered the hardware store of Thomas J. Burnby at 1930 Columbia Avenue, Philadelphia. According to defendant they had "decided to take a chance of going in to see whether or not he had any money" and they "intended it to be a stick-up". Burnby, a slightly built man 67 years of age, was alone in the store. They pretended to order some electric light fixtures. Burnby started to the rear of the store to get the merchandise. Defendant asked Wooding "if it was a good deal". Wooding shook his head yes, whereupon defendant pointed the revolver, as he says, "in the old man's back". As Burnby turned around Wooding shouted "blast!" Defendant fired. Wooding again shouted "blast!" Defendant fired a second and a third shot. Burnby fell, mortally wounded, and died almost instantly. The two then ran into the street but Wooding went back and took $6 and a revolver from the dead man's pockets. He rejoined defendant and they went to a taproom where they had some drinks, then to the home of defendant's sister, and then to the taproom again where Wooding divided with defendant the proceeds of the robbery. They decided "to try to get some more change". Accordingly they entered the grocery store of Frank Glickman, 2351 W. Nicholas Street, which was a few blocks away. After ordering some groceries

Wooding asked defendant whether it was "all right", and, on defendant's nodding affirmatively, leveled at Glickman the revolver taken from Burnby and announced that "this is a stick-up". At that moment a customer came into the store and defendant and Wooding became frightened and ran out. Defendant fled to a house at 2411 Master Street, the home of his "girl friend", ran through it into the back yard where he tossed away his revolver, and then jumped over fences until he reached 24th Street where he was caught by the police; it was then between eight thirty and nine o'clock. Wooding too ran through the Master Street house, climbed over several fences, came out through a side alley and was caught by a policeman but pointed his revolver at him and escaped; he was arrested in a tap-room the following evening.

The facts thus stated were all admitted by defendant both in a signed confession and at the trial. His principal concern was, and now is, not with his conviction, but with the penalty imposed upon him by the jury.

It is urged by defendant's counsel that testimony concerning the attempted robbery of Glickman should not have been admitted. In a previous trial for that offense defendant had pleaded guilty and been sentenced and the peculiar argument is advanced that by reason of the admission of that testimony he was now being exposed to double jeopardy. Both the plea of guilty and the facts concerning the Glickman "stick-up" were admissible on two grounds: (1) because that affair took place almost immediately after, and in the same vicinity as, the Burnby murder, in conjunction with which it constituted a chain of closely connected crimes for the common purpose of obtaining money by robbery;[1] (2)

---

[1] *Goersen v. Commonwealth*, 99 Pa. 388, 398, 399; *Commonwealth v. Coles*, 265 Pa. 362, 366, 367, 108 A. 826, 827; *Commonwealth v. Bell*, 288 Pa. 29, 34, 35, 135 A. 645, 647; *Commonwealth v. Williams*, 307 Pa. 134, 148, 160 A. 602, 607.

because those facts, throwing light upon the character of defendant and helping to show the manner of man he was, were properly for the consideration of the jury in the determination of the penalty.[2]

There was admitted in evidence not only the signed confession of defendant himself but also that of Wooding. It is objected that this violated the constitutional right of the accused to meet the witnesses face to face. Not only, however, was Wooding's confession made in defendant's presence, but, when reduced to writing, was read and signed by him as a witness without his denying or repudiating any of the statements it contained with respect to his own complicity in the crimes. For the purpose of showing such tacit acquiescence on defendant's part Wooding's confession was clearly admissible: *Commonwealth v. Ballon*, 229 Pa. 323, 78 A. 831; *Commonwealth v. Carelli*, 281 Pa. 602, 606, 127 A. 305, 306; *Commonwealth v. Lawrence*, 282 Pa. 128, 132, 127 A. 465, 466; *Commonwealth v. Rose*, 327 Pa. 220, 223, 193 A. 17, 18; *Commonwealth v. Vallone*, 347 Pa. 419, 32 A. 2d 889.

There is no justification for defendant's complaint that the trial judge overemphasized the strong features of the Commonwealth's case and minimized those of the defense. As previously stated, defendant admitted, in all its repulsive details, the atrocious crime which he committed, and the only excuses which he offered for its perpetration were that he had been drinking heavily and smoking "reefers", which are cigarettes containing heroin and marijuana weed, and that he was a person of sub-normal mentality. In support of this latter plea he introduced records of the Board of Education to

---

[2] *Commonwealth v. Flood*, 302 Pa. 190, 194, 195, 153 A. 152, 153; *Commonwealth v. Williams*, 307 Pa. 134, 151, 152, 160 A. 602, 608; *Commonwealth v. Stabinsky*, 313 Pa. 231, 237, 238, 169 A. 439, 441; *Commonwealth v. Thompson*, 321 Pa. 327, 331, 184 A. 97, 99.

show that when he left school at the age of 16 he was only in the fourth grade and had the mental development of a nine to ten year old boy, and that the psychological test then given him indicated that he had "about" reached the limit of his intellectual development. Defendant is now 22 years of age, and we find nothing objectionable in the trial judge's pointing out in his charge that the evidence did not disclose whether or not there had actually been any development of defendant's intelligence during the six years following the time he left school. As far as his alleged drunkenness is concerned, all of his actions in connection with the commission of the crime and his subsequent attempt to escape show that he was in full control of his physical and mental faculties. At any rate the jury heard all the evidence on those subjects and presumably took it into consideration but nevertheless decided upon the death penalty. Notwithstanding the praiseworthy efforts of counsel on his behalf we find nothing in either the facts or the law which would justify, much less compel, a reversal of the judgment and sentence.

Judgment and sentence affirmed.