2015 PA Super 162

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT BARNETT, | |
| Appellant | No. 1209 EDA 2009 |

Appeal from the Judgment of Sentence December 2, 2002
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0200061-2002

BEFORE:  BOWES, DONOHUE, AND STABILE, JJ.

OPINION BY BOWES, J.:                                **FILED JULY 29, 2015**

Robert Barnett appeals *nunc pro tunc* from the judgment of sentence of life imprisonment after a jury found him guilty of first-degree murder, robbery, burglary, conspiracy, and carrying a firearm without a license. In addition to being sentenced to life imprisonment, the Court sentenced Appellant to five to ten years for criminal conspiracy and three and one-half to seven years on the firearms count. This case returns to this Court after our Supreme Court remanded the matter to the trial court following its decision in **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013).  Upon review, we affirm.

The trial court delineated the following relevant facts.

On the afternoon of September 8, 2001, 84 year old Harry Renner was working in the upstairs office of his restaurant

located at 4120 Main Street in Manayunk neighborhood of Philadelphia. As Mr. Renner sat working at his desk, [A]ppellant and his son entered the office, threw a blanket over Mr. Renner's head and ordered him at gunpoint to open the office's safe. Mr. Renner complied and [A]ppellant and his son took the thousands of dollars of cash proceeds from the previous night's business that was in the safe. Appellant then shot the elderly victim in the head, killing him.

Prior to the crime, [A]ppellant had asked his friend Craig Walker to participate as the getaway driver, but Walker refused. When Walker saw the story of the robbery and murder on the evening news, he immediately recognized it as the crime [A]ppellant had invited him to join him in committing. Then, on September 10, 2001, both [A]ppellant and his son drove new cars to Walker's home where [A]ppellant bragged about robbery. Walker said that [A]ppellant glared at his son when the son scolded [A]ppellant that he didn't have to shoot the victim. Mr. Walker saw [A]ppellant a few more times in the area during the next few days, carrying a lot of cash and handing out money to a crowd of people. Appellant also bragged about the crime to his girlfriend, Gail Alvin. Gail Alvin later told police that she accompanied [A]ppellant and his son to a car dealership when they purchased the new vehicles. When she asked where they had gotten the money from for the cars, [A]ppellant bragged about having committed a robbery in Manayunk.

On October 15, 2001, when police attempted to stop [A]ppellant for disregarding a stop sign, [A]ppellant sped off, went through traffic signals and finally stopped on the sidewalk. Appellant then fled on foot and struggled with police as they apprehended him. Police recovered thirteen $100.00 bills from [A]ppellant's person. Appellant later gave a voluntary statement to police in which he admitted his participation in the crimes. Additionally, while [A]ppellant was incarcerated awaiting trial, a fellow inmate, Ernest Johnson, heard [A]ppellant tell another inmate that he had to shoot Mr. Renner because he had seen [A]ppellant's face, and that [A]ppellant planned to blame his son for everything.

Trial Court Opinion, 6/22/09, at 2-3.

Following the imposition of his sentence, Appellant, represented by trial counsel, filed a timely direct appeal. However, due to an insufficient brief, this Court determined that all of Appellant's issues were waived. Accordingly, Appellant sought post-conviction relief via the Post-Conviction Relief Act ("PCRA"). In his PCRA petition, Appellant raised various claims of ineffective assistance of counsel and also sought the reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court conducted an evidentiary hearing where both Appellant and his trial attorney testified. The court denied Appellant's petition on the merits.

Appellant appealed, and this Court reversed solely as to the denial of Appellant's direct appeal rights. Thus, Appellant's direct appeal rights were reinstated. This Court did not address Appellant's remaining ineffective assistance of counsel claims. In Appellant's reinstated direct appeal, he raised only ineffective assistance of counsel issues. This Court, in a published *en banc* decision, determined that Appellant's ineffectiveness claims could not be addressed during his reinstated direct appeal. **Commonwealth v. Barnett**, 25 A.3d 371 (Pa.Super. 2011) (*en banc*), *vacated by* 84 A.3d 1060 (Pa. 2014). The Pennsylvania Supreme Court vacated that order and remanded the case to the PCRA court after its decision in **Holmes**, **supra**.

The **Holmes** Court held, in pertinent part, that ineffectiveness claims cannot be addressed on direct appeal absent a waiver of PCRA rights. It

determined that where good cause is shown, and a defendant waives PCRA review, ineffectiveness claims may be addressed on direct appeal. Thereafter, the PCRA court conducted a waiver colloquy and Appellant, with the agreement of the Commonwealth, waived his right to PCRA review. The matter is now ready for this Court's review. Appellant raises the following issues on appeal.[1]

1. Trial Counsel and Appellate Counsel rendered ineffective assistance of Counsel for failing to properly preserve and file for appeal issues raised at trial regarding a) evidence of Appellant's flight from an unrelated incident as evidence of Appellant's guilt in the instant case; b) introduction of evidence of money seized from the defendant in an unrelated incident as evidence of "sudden wealth" of the Defendant from the instant case; c) the introduction of testimony and evidence of Appellant's arrest for a crime unrelated to the criminal charge for which he was on trial.

2. Trial Counsel was ineffective for failing to request an instruction that the charges which gave rise to the evidence of the defendant's flight and moneys found on the defendant were unrelated to the charge for which he was on trial [and] were dismissed for lack of prosecution;

3. That trial Counsel was ineffective in failing to object to the Commonwealth's closing argument where the prosecution argued that it need not prove a specific intent to kill in order to be found Guilty of Murder in the First Degree and was ineffective in failing to object to the trial Court's instruction

---

[1] Both Appellant and the Commonwealth have filed the same principal brief lodged in the prior appeal. The Commonwealth, however, has now abandoned its originally-briefed position that Appellant's ineffectiveness claims must be deferred until PCRA review. As the Commonwealth does not challenge whether good cause exists, we do not consider that question herein.

that Appellant could be found Guilty of Murder in the First Degree on the acts, circumstantial or direct of an accomplice, co-conspirator thereby instructing the jury that the Commonwealth did not need to prove a specific intent to kill by appellant to be found Guilty of Murder in the First Degree.

4. That trial counsel was ineffective for failure to object to the introduction to or preserve for appeal and file for appeal in the introduction of the testimony of Craig Walker of the testimonial statement of Defendant's son/co-Defendant Robert Barnett, Jr. that "you didn't have to shoot him";

5. That trial counsel failed to properly preserve or file an appeal to the introduction of unrelated criminal actions and/or prejudicial testimony relating to the Appellant that related to an Office Max Robbery in the Plymouth Meeting Mall and a composite sketch pursuant to the defendant and the defendant's son;

6. That trial Counsel failed to fully and properly advise Appellant regarding his right to testify at trial and therefore the Appellant's decision not to testify was not fully knowing, involuntary [sic] or intelligent including but not limited to being ineffective for failing to investigate defendant's access to cash money on Appellant's behalf that would have rebutted the prosecution's theory of "sudden wealth".

Appellant's brief at 4 (inconsistent capitalization in original).

Appellant's issues are premised on ineffective assistance of counsel. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. ***Id***.

Arguable merit exists when the factual statements are accurate and "could establish cause for relief." *Id*. at 707. Whether the "facts rise to the level of arguable merit is a legal determination." *Id*. In considering whether counsel acted reasonably, we look to "whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." *Id*. "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Id*. (citations omitted). Lastly, prejudice exists where "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. This probability is sufficient when it "undermines confidence in the outcome of the proceeding." *Id*. Counsel is presumed to have rendered constitutionally effective representation. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984)

Appellant's initial claim is actually three separate issues. First, Appellant asserts that counsel erred in failing to object to the admission of evidence of Appellant's flight from an unrelated incident, *i.e.*, his arrest for possession of cocaine. Next, he avers that trial counsel rendered ineffective assistance in allowing into evidence money that was seized from that arrest. Lastly, Appellant posits that trial counsel was ineffective because he did not object to the introduction of Appellant's arrest for another criminal charge.

With respect to Appellant's first argument, trial counsel did file a motion *in limine* seeking to preclude the Commonwealth from introducing evidence from Appellant's arrest on October 16, 2001. At that time, Appellant was operating a stolen vehicle and in possession of drugs. When police attempted to pull him over after he ran a stop sign, he fled in his car and then on foot. Police captured him and recovered $1300 in his pocket. Appellant maintained that the evidence of the arrest and flight therefrom should be precluded because it was unrelated to the charges in this case.

The trial court granted Appellant's motion in part. Specifically, it precluded the Commonwealth from introducing evidence that the car was stolen, and that Appellant possessed drugs and made a throwing motion during his flight. However, the court permitted the Commonwealth to introduce the fact that Appellant fled from police and that they recovered $1300 in cash when he was arrested.

Appellant contends that the trial court's ruling provided him with "the ultimate Hobson's choice." Appellant's brief at 15. According to Appellant, the reason for his flight was the stolen car and illegal drugs, but to demonstrate that position he would be "compelled to introduce to the jury inadmissible criminal acts." *Id*. In contrast, if Appellant did not indicate that the reasons for his flight were for the stolen car and possession of drugs, he would allow "the introduction to the jury of a false factual basis for his flight[.]" *Id*. Appellant adds that the record establishes that he did not

know that he was wanted for homicide when he fled and no arrest warrant existed on that charge at the time. Accordingly, he submits that consciousness of guilt for homicide could not be proven where he did not know that he was wanted for that crime.

Since trial counsel filed a motion *in limine* seeking to preclude the introduction of this evidence, including his flight, Appellant's ineffectiveness claim necessarily fails. Appellant also focuses his ineffectiveness position on appellate counsel's performance and his failure to preserve the issue in his original direct appeal. However, that concern became moot when Appellant's direct appeal rights were reinstated. Because Appellant is proceeding on direct appeal, his argument properly would be that the trial court erred in ruling this evidence admissible. We are cognizant that although Appellant's brief, as outlined above, sets forth this position, Appellant in his statement of issues did not raise an argument of trial court error despite presenting such an issue in his May 15, 2009 Rule 1925(b) concise statement. As to the underlying issue, the Commonwealth reiterates that trial court's position that whether Appellant's flight was the result of the stolen car and drugs rather than the homicide went to the weight of the evidence and not its admissibility.

We find, in regards to Appellant's trial court error arguments, aside from waiver due to failure to include it in his statement of issues, that any error in the admission of Appellant's flight and the money recovered from

- 8 -

him, was harmless error.[2]   An error "can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978).   "When the record reveals that an error did not prejudice the defendant, or that the prejudice was so minimal that, beyond a reasonable doubt, it did not influence the jury, [the Pennsylvania Supreme Court has] held the error harmless."   *Id*. at 164–165 (footnotes omitted).   "Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt."   *Id*. at 166.

Here, Appellant confessed to police to being the getaway driver for the robbery, though he claimed that his son killed the victim.   The Commonwealth also introduced evidence that Appellant told an inmate that he shot the victim because he saw Appellant's face.   That inmate also testified that Appellant indicated that he would place the blame on his son.   The prosecution offered evidence that Appellant's girlfriend provided a statement to police that Appellant admitted to her that he committed a

---

[2]   We recognize the distinction between an ineffectiveness claim and whether prejudice exists and a harmless error analysis.   *Commonwealth v. Freeland*, 106 A.3d 768, 776 (Pa.Super. 2014); *Commonwealth v. Howard*, 645 A.2d 1300 (Pa. 1994).   Since we are analyzing Appellant's trial court error arguments and not an ineffectiveness position, we employ the harmless error standard.   Of course, when an error is harmless a defendant cannot establish actual prejudice under the ineffectiveness rubric.

robbery in Manayunk when she questioned him about the large sum of money he possessed. In addition, the Commonwealth presented evidence from Appellant's friend, Craig Walker, who testified that Appellant asked him to take part in a robbery. Appellant and his son thereafter both admitted to Mr. Walker to committing the robbery. In doing so, Appellant's son remarked that Appellant should not have shot the victim. Further, there is no dispute that one day after the robbery and murder, Appellant and his son purchased two vehicles with approximately $15,000 in cash. For these reasons, we find that any prejudice to Appellant was minimal and would not have influenced the jury.

Appellant also argues that counsel was ineffective in permitting the introduction of the money seized during the traffic stop as evidence of sudden wealth. As noted, counsel did object and sought to preclude this evidence from being admitted. Hence, trial counsel cannot be ineffective on that ground. Further, for the same reason outlined above, any claim of appellate counsel ineffectiveness for not raising a claim of trial court error on direct appeal is moot since Appellant's appeal rights were reinstated.

Appellant also, though having set forth the claim in his brief as his second issue, posits in the initial argument section of his brief that counsel erred in failing to seek a jury instruction that the Commonwealth returned to him the money it seized. We note our disapproval of Appellant's briefing

method in this regard. Pointedly, Appellant's second argument in his brief pertains to his third issue, resulting in unnecessary confusion.

With respect to the merits, Appellant avers that "[d]ue to trial [c]ounsel's ineffectiveness, . . . . the jury [was] never made aware of the fact that all the charges rising out of the October 16, 2011 case were dismissed and the monies in fact which would apparently identify the defendant to the crime of September 8, 2001 were returned to the defendant." Appellant's brief at 17. Continuing, he submits, "[t]he jury is told, falsely, that the monies are the only thing taken from the defendant at the time of this stop as a result of an inventory search." *Id*.

We again note that Appellant has muddled together his argument relative to trial counsel ineffectiveness and trial court error. *See* Appellant's brief at 17-18; *Id*. at 18 ("In the present case, the Court improperly permitted the introduction of the evidence of flight and sudden wealth to the prejudice of the defendant."). The majority of Appellant's position as to sudden wealth focuses on trial court error, a distinct claim from counsel's ineffectiveness. *See Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005). Moreover, other properly admitted evidence of Appellant's sudden wealth, pertaining to his purchase of vehicles, was admissible. Hence, any trial court error in admitting evidence of Appellant's possession of $1300 was harmless. Lastly, he has not forwarded any additional argument as to the introduction of testimony and evidence of Appellant's commission of another

crime. Frankly, he does not specify what evidence or other crime he is referencing. Accordingly, he is entitled to no relief.

In Appellant's second argument, which, as mentioned, is his third issue, he asserts that trial counsel was ineffective for failing to object to the prosecutor's closing argument and neglecting to object to the jury instruction on specific intent relative to accomplice liability. Appellant contends the following statement by the prosecutor was erroneous:

> if I assist you in the commission of a criminal act-let's say we agree to rob a bank together. You say we are going to rob this bank together. I tell you I'll get the map of the bank and I'll find out really good times and I'll get the combination to the vault and I do that, and I come to you and I say okay, here's the map, go in this way, make a left, the vault will be straight ahead of you, the combination is 1, 2, 3, now, go ahead, and when you come back, we're going to share whatever. And you say fine and you go off and go into that bank . . . .and you come out and come back to my house and you give me half of the stuff, I never set foot in that bank but I am every bit as responsible as you are for that burglary and that theft of the bank because we did it together. I am your accomplice. . . .But you decided, you know, I think I'm going to take a gun in case. And you went into that bank and while you're inside that bank following my map, pushing the numbers I told you to push, the security guard comes up behind you and says 'freeze' and you pull out your gun, turn around and shoot him and then you finish getting the securities and the bonds and the baubers and you come back out and you come back to my house and you give me the money. I'm as responsible as you are for the shooting of the security guard because we share responsibility for that crime we have entered into together.

N.T., 11/26/02, at 88. In addition, Appellant challenges counsel's failure to object to the prosecution's statement that,

> A killing of the first degree is a killing with malice and a specific intent to kill. The shooter or his accomplice or his co-conspirator must have a fully formed intent to cause the death of this victim before the trigger is pulled. That consciousness, that premeditation, that intent to cause the death of your victim does not have to be long in its formation. You must have entered 4120 Main Street with the belief that with his military precision, we're going to get that blanket over his head.

*Id*. at 91-92.

Appellant asserts that these portions of the prosecutor's summation erroneously posited that, "the specific intent to kill necessary for [m]urder in [the] [f]irst [d]egree may be held by one person and imputed to another." Appellant's brief at 20. He adds that these erroneous statements were compounded when the trial court instructed the jury on accomplice liability. According to Appellant, trial counsel should have objected to the following instruction,

> Now, members of the jury if you believe that the petitioner or accomplice or co-conspirator intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence for which you may infer that the petitioner in his own mind had a specific intent to kill.

N.T., 11/26/02, at 113-114.

Appellant argues that this instruction failed to adequately set forth that the defendant himself must possess the requisite specific intent to kill to be guilty of first-degree murder as an accomplice. In leveling this aspect of his argument, Appellant acknowledges that jury instructions must be read in their entirety. Nonetheless, he asserts that where a trial court instructs both

correctly and incorrectly and it cannot be discerned which instruction the jury followed, such error results in prejudice. Appellant's brief at 22 (citing **Commonwealth v. Waller**, 468 A.2d 1134 (Pa.Super. 1983)). **Waller**, however, is not precedential since it was a three-judge panel with one judge concurring in result and another dissenting.

Appellant also relies on **Commonwealth v. Flanagan**, 854 A.2d 489 (Pa. 2004). In **Flanagan**, the defendant entered a general plea of guilty to homicide. During his plea, he acknowledged that it was presumed at that time that he was guilty of third-degree murder, but the Commonwealth could establish a higher degree of murder at a degree of guilt hearing. In addition to a defective plea colloquy, the plea court "erroneously advised Flanagan that accomplice theory renders an accomplice liable for 'any crimes committed by any other accomplice regardless of whether a particular accomplice committed the particular crime about which we are talking.'" **Id**. at 493. It incorrectly added,

> So that if there are people who are accomplices in the commission of a crime, commission of a murder, commission of a robbery, in a commission of a theft, and if only one of them actually commits the crime but if the other person is his accomplice, he is helping him, he is aiding him, he is assisting him in committing it, then the person who aids and assists and helps and cooperates is equally guilty of the commission of *any crimes* committed by the person he aided.

**Id**.

- 14 -

During PCHA review, the PCHA court determined that plea counsel was ineffective and granted Flanagan's request for a trial. Both this Court and our Supreme Court affirmed. Appellant maintains that the prosecutor's explanation of accomplice liability and the trial court's accomplice liability instruction were akin to the *Flanagan* trial court's erroneous statement of the law.

The Commonwealth first counters that the prosecutor's argument was legally correct. It adds that the prosecutor did not argue that Appellant was an accomplice but sought a conviction based on the theory that he was the shooter. Lastly, the Commonwealth reasons that the jury instructions read as a whole establish that the jury was repeatedly informed that Appellant must have formed a specific intent to kill to be found guilty of first-degree murder.

Initially, we address Appellant's claims relative to the prosecutor's summation. We agree that the prosecutor's initial statement relative to accomplice liability with respect to murder was inaccurate. A person is only responsible as an accomplice for first-degree murder if he possesses the requisite specific intent to kill. *Id*. at 501 ("to be convicted as an accomplice, a person must act with the requisite *mens rea*"); *Commonwealth v. Bennett*, 57 A.3d 1185, 1201 (Pa. 2012) ("the charge, when read in its entirety, appropriately conveys that an accomplice or co-

- 15 -

conspirator must possess the specific intent to kill in order to be found guilty of first-degree murder.").

Therefore, the prosecutor's hypothetical bank scenario would not establish accomplice liability for first-degree murder merely because one agreed to rob the bank and a person was shot. Rather, the accomplice must have shared a specific intent to kill to be considered an accomplice for first-degree murder. Similarly, the second statement at issue is less than precise. If a shooter possesses "a fully formed intent to cause the death of his victim[,]" N.T., 11/26/02 at 91, but his accomplice does not, then the accomplice is not guilty of first-degree murder.

Nonetheless, we do not find that Appellant is entitled to a new trial due to counsel's failure to object. Appellant has omitted the prosecutor's argument immediately following the latter disputed portion of the prosecutor's summation. There, the prosecutor made it clear that she was arguing that Appellant was the actual shooter. Notably, the prosecutor set forth,

> We're going to put that blanket over his head. We're going to prevent him from seeing our face. He'll never be able to identify us. . . .But when you see that victim poking up under the blanket and looking at you and you realize, oh, wait a minute. He sees our face. If we want to get out of here without him being able to identify us, there's only one way to do that. Bang.
>
> That moment of reflection as you're taking the muzzle of that gun and pressing it against the head of another human being before you pull that trigger, that's specific intent to kill and

that is first-degree murder and that is what this defendant committed.

N.T., 11/26/02, at 92-93.

She continued by noting that, if a person commits a robbery and another person is killed and "[y]ou don't mean for it to happen[,]" then you are guilty of second-degree murder. *Id*. at 93. Thus, the full context of the argument reveals that the prosecutor was not contending that Appellant could be found guilty as an accomplice without a specific intent to kill. Accordingly, because the prosecutor did not argue that Appellant should be convicted as an accomplice and, as will be outlined *infra*, the trial court instructed the jury that Appellant must have a specific intent to kill, Appellant cannot establish actual prejudice. *See Bennett*, *supra*.

In regards to Appellant's jury instruction, we are guided by the following principles.

> "It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue." *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1187 (1999). "An instruction will be upheld if it clearly, adequately and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law." *Commonwealth v. Spotz,* 563 Pa. 269, 759 A.2d 1280, 1287 (2000) (citation omitted).

*Commonwealth v. Cook*, 952 A.2d 594, 626-627 (Pa. 2008). In the present case, the court instructed the jury, "In order to find this defendant

- 17 -

guilty of murder of the first degree you must find that he, in his own mind, had the specific intent to kill and that the killing was a willful, deliberate and premeditated act." N.T., 11/26/02, at 112. It later reiterated, "Murder of the first degree requires that the defendant in his own mind have the specific intent to kill. It is an unlawful, willful, deliberate and premeditated killing with malice." *Id*. at 119. Therefore, the jury was properly instructed that it could only find Appellant guilty of first-degree murder if it determined that he had a specific intent to kill Mr. Renner. *See Bennett*, *supra*. Appellant cannot establish actual prejudice.

In his next issue, Appellant contends that trial counsel was ineffective for failing to object to the introduction to the testimony of Craig Walker regarding Appellant's son's statement to his father that "you didn't have to shoot him." N.T., 11/21/02, at 185.[3] He submits that the trial court's

_____

[3] We note our disapproval with the Philadelphia Clerk of Courts, which consistently has failed to supply this Court with the complete certified record even in cases where the appellant has requested the pertinent transcripts. Despite this Court entering an order during the prior appeal in this matter to ensure that transcripts were provided, the transcripts for November 21, 2002 and November 22, 2002 are not contained in the certified record. This Court previously made official attempts to secure all of the trial transcripts in this matter and made unofficial inquiries after remand as well. While this Court generally may only consider facts that have been duly certified in the record, *Commonwealth v. Young*, 317 A.2d 258, 264 (Pa. 1974), where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it. *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012). Here, the reproduced record contains the relevant
*(Footnote Continued Next Page)*

admission of this statement as admissible hearsay violated his confrontation clause rights. Appellant acknowledges that trial counsel filed a motion *in limine* to preclude this evidence and repeatedly objected to the introduction of his silence as a tacit admission. However, trial counsel did not object to the prosecutor's closing argument that extensively highlighted the tacit admission. Thereafter, with the agreement of trial counsel, **see id**. at 100-101,[4] the trial court instructed the jury as follows,

> there was a statement by the defendant's son that was made in the presence of the defendant. This statement of the defendant's son is not evidence and does not have any probative value and should not be considered for its truthfulness.
>
> However, where a person is accused of a crime or of doing a criminal act and he fails to respond, that is, remain silent, that silence may be a circumstance tending to show a tacit admission of the facts of the accusation. Such silence does not necessarily tend to prove an admission. A person may choose not to respond and remain silent in the face of an accusation for a variety of motive[s] or reasons and may do so even though the accusation is false and untrue.

N.T., 11/26/02, at 131-132. Appellant does not challenge the prosecutor's argument. Instead, Appellant again confuses the procedural posture of this matter by asserting that prior appellate counsel was ineffective for not

_(Footnote Continued)_ ————————

transcripts and there is no dispute as to their contents. We therefore considered them in our review.

[4] Trial counsel did object to the introduction of the evidence, and even after acquiescing to the jury instruction repeatedly noted that he had objected to the introduction of the tacit admission evidence.

addressing the admission of the tacit admission evidence in the previous direct appeal. As we have repeatedly mentioned *supra*, Appellant is now proceeding on direct appeal. Prior appellate counsel's ineffectiveness is no longer at issue because Appellant's direct appeal rights were reinstated and he was free to raise the alleged error as trial court error. Nevertheless, since Appellant has waived further PCRA review, we decline to find waiver based on appellate counsel's imprecise briefing.

In **Commonwealth v. Vallone**, 32 A.2d 889 (Pa. 1943), *overruled in part by* **Commonwealth v. Dravecz**, 227 A.2d 904 (Pa. 1967), our Supreme Court, without citation and with one justice vigorously dissenting, stated,

> The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made.

**Vallone**, **supra** at 890.

In **Dravecz**, police officer read a statement to the defendant that implicated the defendant in a burglary. The accused made no comment once the officer was done reading the statement. The Supreme Court issued four separate opinions, with the ultimate outcome being that the tacit admission was inadmissible. The holding in **Dravecz** was subsequently modified in **Commonwealth v. Schmidt**, 299 A.2d 254 (Pa. 1973). In

**Schmidt**, the defendant was found guilty of murder during a burglary. During his trial, two witnesses testified that shortly after the burglary they were with Schmidt and his co-defendant in a car when the co-defendant said that he was going to burn his fingerprints. Schmidt made no reply. The Court found that the "statement accused Schmidt of nothing; he was not the subject of the remark, and thus there was no reason for him to make any response. The evidence, therefore, lacked probative value in establishing the defendant Schmidt's participation[.]" **Id**. at 265.

However, the court held that the admission did not entitle the defendant to post-conviction relief because it did not violate his Fifth Amendment right against self-incrimination. At that time, only constitutional mistakes afforded relief under the PCHA. The **Schmidt** Court stated that tacit admissions only violate the constitution in the face of police questioning. Subsequently, in **Commonwealth v. Coccioletti**, 425 A.2d 387 (Pa. 1981), our Supreme Court provided that **Dravecz**, **supra** "was limited to implied admissions made while in custody or in the presence of police officers." **Coccioletti**, **supra** at 392.

Both this Court and the Pennsylvania Supreme Court most recently addressed tacit admissions in **Commonwealth v. Molina**, 33 A.3d 51 (Pa.Super. 2011) (*en banc*), *affirmed by*, 104 A.3d 430 (OAJC). In **Molina**, an *en banc* Court ruled that a prosecutor's closing summation was improper where he argued that the defendant's pre-arrest silence, in not speaking to a

- 21 -

missing persons investigator, should be used as a tacit admission of guilt in a homicide case.

A divided Pennsylvania Supreme Court affirmed on separate constitutional grounds. Rather than rely on the federal constitution, the lead opinion by Justice Baer found that the use of tacit admissions involving law enforcement violated the Pennsylvania Constitution's prohibition against compelled testimony. Here, Appellant does not argue that his Fifth Amendment right against self-incrimination or his related Pennsylvania Constitutional right against self-incrimination are implicated. Rather, Appellant posits that his confrontation clause rights were violated because he was not afforded an opportunity to confront his son. Appellant relies on **Crawford**, **supra** in support. He maintains that there was no evidence that his son was unavailable and avers that the statement was admitted for its truth.

The Commonwealth relies on **Commonwealth v. Bartlett**, 704 A.2d 659, 662 (Pa.Super. 1997), and **Commonwealth v. Faraci**, 466 A.2d 228, 232 (Pa.Super. 1983), in arguing that tacit admissions are admissible. This Court, in **Faraci**, relied on *dicta* from both **Commonwealth v. Bolish**, 113 A.2d 464 (Pa. 1955), and **Commonwealth ex rel. Shadd v. Myers**, 223 A.2d 296 (Pa. 1966). In neither of these cases was introduction of a tacit admission upheld.

The Commonwealth continues that **_Crawford_** is inapplicable because the "actual 'statement' in this context is a 'statement' (by conduct) on the part of defendant." Commonwealth's brief at 20 (citing **_Commonwealth v. Brooks_**, 50 A.2d 325, 327 (Pa. 1947)).[5] Finally, it submits that Appellant cannot establish actual prejudice in light of the other evidence arrayed against him.

Here, it is accurate that Appellant's son's statement was not the evidence at issue, and the court instructed the jury that it could not consider the statement for its truth. Rather, it was Appellant's own silence in the face of that statement that was the evidence, which is why the tacit admission rule has ordinarily been questioned on self-incrimination grounds and not the confrontation clause. **_But see Commonwealth ex rel. Staino v. Cavell_**, 217 A.2d 824, 832-833 (Pa.Super. 1966) (Hoffman, J., dissenting) (opining that tacit admission evidence that defendant remained silent after police read a signed confession by a co-defendant and the defendant did not

---

[5] The Commonwealth's argument overlooks that its position is proof that the tacit admission was being used as self-incrimination evidence. Since Appellant does not level a self-incrimination challenge, we are not faced with reaching such a determination. **_But see Commonwealth ex rel. Staino v. Cavell_**, 217 A.2d 824 (Pa.Super. 1966) (Hoffman, J., dissenting).

speak, after being advised that he was not required to say anything, violated both his right against self-incrimination and confrontation right.).[6]

In *Brooks*, *supra*, referenced by the Commonwealth, the Pennsylvania Supreme Court ruled that a signed confession by Brooks' co-conspirator, Albert Wooding, which Brooks read and signed as a witness to hearing Wooding's oral confession, was admissible as "tacit acquiescence[.]" *Brooks*, *supra* at 327. In so ruling, it rejected the defendant's Pennsylvania constitutional claim that this violated his right "to meet the witnesses face to face." *Id*. Prior to *Brooks*, in *Vallone*, *supra*, the Pennsylvania Supreme Court noted that an "accusatory statement, being hearsay, is not admissible as evidence in itself of the facts which it asserts, but merely to show what the charges were to which defendant offered no denial[.]" *Vallone*, *supra* at 890. Simply put, the evidence in question is the reaction of the defendant and not the statement; therefore, the confrontation clause was not implicated.

Similarly, in the companion cases of *Rose*, *supra* and *Oreszak*, *supra*, the Pennsylvania High Court addressed the right to confront witnesses where written statements of a co-conspirator were introduced against the defendant. The *Rose* Court opined that the statement "was not

---

[6] The opinion in support of affirmance in *Commonwealth ex rel. Staino v. Cavell*, 217 A.2d 824 (Pa.Super. 1966), is no longer sound. *See Commonwealth v. Dravecz*, 227 A.2d 904 (Pa. 1967).

introduced as the testimony of his accomplices, thereby depriving him of the right of cross-examination, but it was offered as a confession by him in so far as he admitted the facts stated in his presence by the other participants in the crime, and explained his part in its perpetration." *Rose*, *supra* at 18. In *Oreszak*, the same evidence was challenged. Oreszak, however, was not present when some of his co-defendants' statements were made. Nonetheless, police read the entire transcript of his accomplices' statements to him and he signed the joint statement. Setting aside that these cases involved law enforcement, and their holdings are now invalid, in none of those cases was there a tacit admission; rather, the defendants provided signed confessions.

In *Staino*, *supra*, Judge Hoffman undertook a confrontation clause analysis relative to a tacit admission in the face of police questioning. There, five police officers accompanied Staino into a small room, where a police captain advised him that he could remain silent and that anything he said could be used against him at trial. Police then provided an oral statement purportedly given by Robert Poulson implicating Staino in a burglary. Staino remained silent, or said, "I have nothing to say." *Id*. at 826. Later, police, after again advising him of his right to remain silent, read him a signed statement by Poulson that set forth that Staino was involved in the aforementioned burglary. Staino responded by saying, "I have nothing to say" and remained silent. *Id*. At trial, these tacit

- 25 -

admissions were admitted into evidence and Staino was convicted. Judge Hoffman, posited, "The use of the tacit admission in this case was also constitutionally defective because appellant was denied the protection of his constitutional right of confrontation when the oral and written statements of Robert Poulson were admitted into evidence." *Id*. at 832. In support, he relied on *Douglas v. Alabama*, 380 U.S. 415 (1965).

In *Douglas*, a co-defendant named Loyd had signed a confession implicating Douglas in the shooting of the victim. When called at trial, Loyd invoked his right against self-incrimination. The prosecutor was permitted to read Loyd's signed confession, although it was not introduced into evidence. The Supreme Court found that the defendant's inability to cross-examine Loyd permitted the jury to impermissibly infer that Loyd's statements had been made and were true. Accordingly, it ruled that Douglas' confrontation clause right was infringed. In *Staino*, Judge Hoffman reasoned that the reading of Poulson's statement, though not evidence, "may lead a jury to infer that the statement has been made and that it was true, especially since the maker does not appear to deny the statement." *Id*. at 832-833.[7] The opinion, however, was non-precedential.

_____

[7] The Superior Court was evenly split; therefore, the lower court's decision was affirmed.

Despite the serious erosion of the foundations for the tacit admission rule, neither this Court nor our Supreme Court has held in a binding opinion that it violates a defendant's confrontation clause rights.[8]  Nonetheless, trial counsel did seek to preclude the admission of this evidence.  While trial counsel did not object to the prosecutor's closing argument relative to the tacit admission, Appellant has not challenged that aspect of trial counsel's performance and the prosecutor's argument was consistent with the trial court's earlier ruling.  Trial counsel cannot be ineffective where he made an argument to preclude the introduction of the tacit admission, especially where preclusion would have been a change in the existing case law since no law enforcement officials were involved.  **See Faraci**, **supra**.  Appellant's ineffectiveness issue does not entitle him to relief.

The penultimate claim Appellant advances on appeal is that trial counsel was ineffective for neglecting to properly preserve or file an appeal to the introduction of unrelated criminal actions and/or prejudicial testimony relating to a separate robbery.  The specific evidence contested on appeal relates to testimony from Craig Walker.  The trial court permitted Mr. Walker

---

[8] We are of the view that Chief Justice Maxey's dissent in **Commonwealth v. Vallone**, 32 A.2d 889 (Pa. 1943), offers persuasive reasoning, even setting aside constitutional concerns, that the probative value of a tacit admission is far exceeded by its prejudicial nature.  In an appropriate case, *i.e.*, where the issue is developed and argued, we would urge our Supreme Court to strongly consider reevaluating the continued viability of the rule.

to testify that, while watching the news with his girlfriend, he saw a story regarding a robbery at the Plymouth Meeting Mall. During the course of that newscast, surveillance video depicting the assailant was shown. Mr. Walker testified that the individual involved resembled Appellant's son.

Appellant argues that this testimony was "irrelevant prejudicial testimony[.]" Appellant's brief at 26. He acknowledges that the trial court provided a cautionary instruction, but maintains that the instruction was insufficient. Appellant asserts that the instruction did not address his son's alleged actions and his son was considered a co-conspirator in the case.

Appellant admits that trial counsel did seek to preclude this evidence pre-trial and objected at trial. Nonetheless, he submits that original appellate counsel, who was also trial counsel, was ineffective in not preserving the issue. The Commonwealth responds that, because trial counsel did object and the court issued a cautionary instruction, no prejudice exists.

Yet again Appellant has ignored that his direct appeal rights have been reinstated and he is in the same position as if the prior direct appeal did not occur. Since trial counsel not only litigated the issue pre-trial in an attempt to preclude the evidence, but also objected to the testimony, he cannot be ineffective. What remains, and what Appellant fails to properly argue, is an assertion of trial court error. We will not develop Appellant's claim for him. Regardless, the trial court's instruction ameliorated any harm. The court

told the jury "that this particular incident that this witness testified to that may or may not have occurred in Plymouth Meeting is in no way related to this case, to this defendant, or any member of this defendant's family." N.T., 11/21/02, at 178-179. The court continued,

> This defendant had nothing whatsoever to do with this particular incident that the witness spoke about. He says he saw it on TV and who it may have reminded him about or what anything else he told you about it is being permitted, but you should know that this defendant had nothing to do at all whatsoever in any way with that incident.

*Id*. at 179. Appellant's claim is meritless.

The final issue Appellant levels on appeal is that trial counsel failed to properly advise him regarding his right to testify at trial and therefore his decision not to take the stand was not knowing, voluntary or intelligent. Appellant contends that trial counsel erroneously informed him that, should he testify, his two prior non-*crimen falsi* convictions for firearms violations could be brought out against him. He also asserts that counsel incorrectly advised him that the Commonwealth might introduce evidence related to his arrest for the stolen car and drugs. Appellant maintains that absent this advice, he would have elected to testify.

The Commonwealth counters that trial counsel testified at the PCRA evidentiary hearing that he believed Appellant would not do well under cross-examination. It adds that trial counsel testified that he believed testimony from Appellant was unnecessary based on the cross-examination

of the Commonwealth's witnesses, and the presentation of one of his own witnesses. The Commonwealth notes that trial counsel's fears "were well founded." Commonwealth's brief at 24. It highlights that Appellant's PCRA testimony involved claims that police fabricated his confession, which still did not make him the shooter, and that he earned over $300,000 at the time of the crime.

Trial counsel testified at the PCRA hearing, with respect to the firearms convictions, that he informed Appellant that those convictions might not be admissible. He further indicated that he also discussed with Appellant that Appellant might not "be able to stand up on cross-examination[.]" N.T., 9/27/07, at 48. Counsel also disputed that he instructed Appellant that information related to the stolen car would be admissible. Specifically, counsel testified that the theft case had been dismissed or withdrawn and he did not think the Commonwealth "would have been fishing around with that." *Id*. at 49.

Contrary to Appellant's claims, trial counsel did not testify that he advised Appellant not to testify because his prior criminal history would be admissible against him. Although trial counsel admitted that it was possible that he discussed Appellant's firearm convictions in conjunction with discussing Appellant's right to testify, he did not admit that he incorrectly told Appellant that they would be admissible or instructed him not testify for that reason. Trial counsel also disputed the suggestion that he informed

Appellant that evidence of the stolen car and drug incident could be used against him. Based on trial counsel's PCRA testimony, we cannot agree with Appellant that counsel provided erroneous legal advice that caused him to forego his right to testify. Moreover, whether Appellant could withstand vigorous cross-examination was a legitimate concern. Trial counsel was not ineffective.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2015