J-S34018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: R.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 796 MDA 2025 |

Appeal from the Order Entered May 21, 2025
In the Court of Common Pleas of Schuylkill County Juvenile Division at
No(s):  CP-54-DP-0000217-2022

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:              **FILED: NOVEMBER 21, 2025**

A.S. ("Father") appeals from the order adjudicating his daughter, R.A., born in November 2019, dependent pursuant to 42 Pa.C.S.A. § 6302(1) of the Juvenile Act.[1]  On appeal, Father challenges the sufficiency of the evidence. Because the record supports the trial court's findings, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record.  R.A. is the oldest of Mother's three children. Mother's two younger children are N.S., born in December 2021, and X.S., born in February 2024 (collectively with R.A., "the children").  Father is not the biological father of N.S. and X.S; thus, they are not subjects of this appeal. The Schuylkill County Children and Youth Services ("CYS") has been involved

---

[1] R.A.'s biological mother, K.A. ("Mother") (collectively with Father, "Parents"), did not file an appeal and did not participate in this appeal.

with this family dating back to June of 2022, when it received a report alleging concerns about Mother's parenting skills. *See* CYS Exhibit 1 at 1 (unpaginated); N.T., 5/19/25, at 15. On September 6, 2022, the juvenile court adjudicated R.A. dependent pursuant to 42 Pa.C.S.A. § 6302(1). The court terminated its supervision of the matter on June 24, 2024, after concluding that Mother had alleviated the dependency concerns.[2]

However, on March 11, 2025, CYS received another report indicating that Mother was addicted to drugs. Additionally, there were subsequent reports that Mother was improperly supervising the children. For instance, CYS received an additional report in April 2025, that R.A., then five years old, and N.S., then four years old, were discovered outside of Mother's home alone and unattended. *See* CYS Exhibit 1 at 2 (unpaginated). There was a subsequent incident where N.S. was again discovered outside alone and unattended. *See id*.

In February 2025, Father became incarcerated at Lehigh County Prison, as a result of charges including, but not limited to, driving under the influence, aggravated assault with a deadly weapon, and prohibited possession of a firearm. *See id*.; *see also* N.T., 5/19/25, at 21-22. At all times relevant to this appeal, Father remained in prison awaiting trial.

---

[2] R.A. was never removed from Mother's home throughout the first dependency case.

On April 16, 2025, CYS filed a dependency petition with respect to R.A., based upon a lack of proper parental care and control pursuant to section 6302(1). CYS did not seek removal of R.A., but requested that she remain in the legal and physical custody of Mother under the protective supervision of the court.

CYS caseworker Taralyn Mahoney ("Ms. Mahoney") testified she mailed to Father in prison a notification about the dependency hearing and a family service plan; Ms. Mahoney included a stamped return envelope for Father to return the signed documents.[3] **See** N.T., 5/19/25, at 22, 30. Ms. Mahoney stated CYS never received a response from Father. **See id**. at 22.

On May 19, 2025, the court held a dependency hearing.[4] Parents were represented by separate counsel. At the outset of the hearing, Mother's

_____

[3] Ms. Mahoney also testified that she sent Father an "absent parent letter." N.T., 5/19/25, at 22. The record does not reveal any information about the content of this letter.

[4] The certified record does not include the notes of testimony from the hearing. However, Father included the subject transcript in the reproduced record. Because the veracity of the transcript in the reproduced record is not in dispute, we may rely upon it. **See Commonwealth v. Barnett**, 121 A.3d 534, 545 n.3 (Pa. Super. 2015) (citation omitted) (stating, "While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it"). We, however, pointedly remind Father that the "[a]ppellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." **Commonwealth v. Wint**, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and internal quotation marks omitted); **see also** Pa.R.A.P. 1921
*(Footnote Continued Next Page)*

counsel stipulated to the order of adjudication and disposition. *See* N.T., 5/19/25, at 4-5. Mother appeared for trial but did not testify. Father was not present at the subject hearing, and his counsel stated that Father waived his right to appear and testify on his own behalf. *See id*. at 13. Parents also did not present any other evidence. CYS presented the testimony of Ms. Mahoney. The court admitted Ms. Mahoney's affidavit attesting to the family's history with CYS and the circumstances surrounding its involvement and investigation following the March 2025 report. *See id*. at 14.

By order of adjudication and disposition dated May 19, 2025, and filed May 21, 2025, the juvenile court granted CYS's petition and adjudicated R.A. dependent. The court maintained Mother's legal and physical custody of R.A. but noted that there was a "significant risk of placement in [f]oster [c]are absent preventive services." Order of Adjudication and Disposition, 5/21/25, at 1.

On June 18, 2025, Father timely filed a notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed its Rule 1925(a) opinion on July 2, 2025.

---

Note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials") (citation omitted).

On appeal, Father raises the following issues for our review:

1. Was the evidence legally insufficient to support a finding of dependency where [CYS] failed to prove a present lack of care, and instead relied upon a sibling's adjudication and speculative future risk, while its own caseworker admitted [R.A.]'s current needs were being met?

2. Did the [juvenile] court err as a matter of law in adjudicating [R.A.] dependent where [CYS] failed to meet its burden of proving by clear and convincing evidence that proper parental care was not immediately available, as it presented no evidence that it investigated the incarcerated Father's arrangements?

Father's Brief at 4.[5]

Regarding our review of dependency matters, this Court has recently explained:

[W]e are required to accept the trial court's findings of fact and credibility determinations when supported by the record. The Court is not required to accept the lower court's inferences or conclusions of law and accordingly we review for an abuse of discretion.

A dependency hearing is a two-stage process governed by the Juvenile Act. The first stage requires the court to hear evidence on the dependency petition and to determine whether the child is dependent. Section 6302, defines a "dependent child," in part, as one who:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent . . .

_____

[5] We have reordered Father's issues for ease of disposition.

that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302(1).  This Court has held a child will be declared dependent when he is presently without proper parental care or control, and when such care and control are not immediately available.  Proper parental care has been defined as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child."  "The question of whether a child is lacking proper parental care and control encompasses two discrete questions: whether the child presently is without proper care and control, and if so, whether such care and control is immediately available."  In answering the first question, the paramount concern is the "welfare of the child at the time of the hearing."  In answering [] the second question, "it may be necessary for the hearing court to look to the future."

A finding that a child is dependent requires proof by "clear and convincing evidence", *i.e.*, testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue."  If the court finds a child dependent, it proceeds to the second stage of the dependency process, which requires an appropriate disposition based on the best interest of the child pursuant to section 6351 (a) and (c).

*Interest of S.D.*, 334 A.3d 919, 925-26 (Pa. Super. 2025) (most internal citations omitted).

With respect to the types of evidence that can meet the clear and convincing standard for dependency, the *S.D.* court continued:

It is well-established that a "finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent."  *In re E.B.*, 83 A.3d 426, 433 (Pa. Super. 2013) (citation omitted) (affirming the adjudication of dependency of an infant based on allegations the family's two older children were adjudicated dependent after physical abuse by father who was the subject of pending criminal charges). . . . This Court has specifically stated that a rule prohibiting a court from considering

prognostic evidence and compelling the court to place the child with natural parents to determine if they can render proper care ignores the possibility that if the "experiment" proves unsuccessful, the consequences to the child could be seriously detrimental or even fatal.

*Id.* at 926-27 (some citations and internal quotation marks omitted).

In his first issue, Father argues that the evidence was insufficient to prove that R.A. is presently without proper parental care or control. **See** Father's Brief at 14-17. Father further contends that the court adjudicated R.A. dependent "entirely" based upon the circumstances of an unnamed sibling, which we discern is N.S. **Id**. at 15-16. We disagree.

Father's arguments fail because Mother, the custodial parent, **stipulated** to R.A.'s dependency adjudication and did not dispute her drug addiction or the incidents regarding her lack of supervision of the children. **See** N.T., 5/19/25, at 4-5. Further, the evidence was clear and convincing through Ms. Mahoney's testimony that Mother's drug tests from March 25, 2025, and April 11, 2025, were positive for methamphetamine, unprescribed amphetamines, and unprescribed marijuana. **See id**. at 16; **see also** CYS Exhibit 1 at 2 (unpaginated). Ms. Mahoney further testified Mother did not initiate drug treatment. **See** N.T., 5/19/25, at 20.

Father's argument the court based the adjudication solely on circumstances with respect to N.S. fails based on the record evidence. As stated above, Ms. Mahoney testified to an incident in April 2025 when R.A. and N.S. were both discovered outside of Mother's home unattended, which

led to police involvement. ***See id***. at 16-17; ***see also*** CYS Exhibit 1 at 2 (unpaginated). Based on Mother's history of drug addiction and neglect of the children, we discern no abuse of discretion. Indeed, the record supports the court's finding R.A. is presently without proper parental care and control.

Father also argues the court abused its discretion when it found such proper parental care and control is not immediately available for R.A. ***See*** Father's Brief at 9-13, 16-17. Specifically, Father contends R.A. could not be dependent because Ms. Mahoney testified Mother was meeting R.A.'s basic needs. ***See id***. at 16-17. In support of this argument, Father baldly asserts evidence of dependency "cannot be based on speculation about what might occur in the future." ***Id***. at 16-17. Father further argues CYS did not meet its evidentiary burden because it failed to investigate ***his*** potential to arrange for ***his sister*** to provide care and control for R.A. during his incarceration. ***See id***. at 10-13; ***see also*** N.T., 5/19/25, at 5-6, 34 (Father's counsel's assertion); N.T., 5/19/25, at 29-30 (upon inquiry on cross examination about whether she contacted Father's sister, Ms. Mahoney replied, "No"). Father also faults CYS for not contacting him via telephone in prison. ***See*** Father's Brief at 11-12. We are not persuaded by Father's arguments.

The crux of Father's argument is that the evidence presented was merely prognostic, and this does not demonstrate that proper parental care and control was not immediately available for R.A. Father presents no legal support for this position. Indeed, the caselaw of our Commonwealth

undeniably allows for prognostic evidence to form the basis of an adjudication of dependency. *See S.D.*, 334 A.3d at 926-27.

Father correctly states Ms. Mahoney testified on cross-examination that R.A.'s basic needs were currently being met by Mother. *See* N.T., 5/19/25, at 26. Nevertheless, the relevant questions to Ms. Mahoney and her answers were as follows:

> Q: So at this time, it seems like, and correct me if I'm wrong, the concerns of [CYS] are largely prospective?
>
> A: We're concerned she's not going to follow through. We're concerned that she won't be able to provide basic needs in the future.
>
> Q: But the only concern for right now is that she has a history of drug use; is that correct?
>
> A: . . . [O]ur concern is really we're looking at the here and now. . . . [T]here is a history; but we want to make sure that there is follow-through with the recommended treatment [] and services so that future incidents of general neglect or abuse, whatever they may be, will be mitigated[.]

*Id.* at 27. We observe no issue with the court's consideration of this prognostic evidence. *See S.D.*, 334 A.3d at 926-27.

Clearly, Father is not immediately available to provide proper parental care and control for R.A. because he is incarcerated. With respect to his argument that he could have arranged for R.A.'s care with his sister, Father

provides no statutory or case authority demonstrating that it would overcome R.A.'s dependency, and we are not aware of any.[6]

To the extent that Father relies upon **Interest of L.E.A-M.**, 156 A.3d 310 (Pa. Super. 2017), to support his contention a parent can provide immediate care and control pursuant to section 6302(1) through an arrangement with a relative, that case is inapposite. In **L.E.A.-M.**, this Court affirmed an order denying a petition to adjudicate a child dependent pursuant to section 6302(3) and (4).[7] **See L.E.A.-M.**, 156 A.3d at 314. The child's uncle, his custodian, filed the dependency petition alleging the child's parents resided in El Salvador, leaving him abandoned and without parents. **See id.** at 312-14. This Court held the lower court properly denied the uncle's petition because he failed to meet his evidentiary burden under the relevant provisions of the Juvenile Act. **See id.** We conclude that **L.E.A-M.** is not controlling because it proceeded under section 6302(3) and (4), neither of which are at issue in this appeal.

_____

[6] Additionally, Father points to no evidence of record establishing sister's qualification or willingness to assume care of R.A.

[7] These provisions provide that a "dependent child" is one who:

> (3)  has been abandoned by his parents, guardian, or other custodian [or]
>
> (4)  is without a parent, guardian, or legal custodian[.]

42 Pa.C.S.A. § 6302(3), (4).

- 10 -

In addition, Father provides no legal support for his contention CYS's failure to attempt telephone contact with him in prison equates to a failure to meet its evidentiary burden. **See** Father's Brief at 11-12. Our review reveals no such precedent. Father is correct that Ms. Mahoney testified she did not telephone him at the prison during her investigation. **See** N.T., 5/19/25, at 23. However, Ms. Mahoney testified to her attempts to contact Father through the mail she sent to him in prison. **See id.** at 22, 30. Father never replied. **See id**. at 22. Thus, Father's claim the court erred in concluding that proper care and control is not immediately available for R.A. is without merit.

Accordingly, we affirm the order of adjudication and disposition pursuant to 42 Pa.C.S.A. § 6302(1).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/21/2025