J-S50012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DERRON J. SMITH | |
| Appellant | No. 1302 EDA 2014 |

Appeal from the PCRA Order April 4, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0127112-2004

BEFORE:  PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                **FILED SEPTEMBER 29, 2015**

Appellant, Derron J. Smith, appeals from the order denying his petition pursuant to the Post Conviction Relief Act ("PCRA").  We conclude that the PCRA court properly concluded that none of Smith's claims of ineffective assistance of counsel merited relief.  We therefore affirm.

A previous panel of this Court set forth the factual and procedural background of this case.

> Smith's conviction follows a shooting incident in which he and co-conspirator Byron Holeman shot Marcus and Malika Spivey at the front steps of their home on North 19th Street in Philadelphia.  On October 9, 2004, Smith and Holeman ventured to the Spivey home and confronted Marcus Spivey as his sister, Malika, then twelve years' [sic] old, sat on the front step coloring.  Seconds into the altercation, Holeman drew a gun and began firing, two of his bullets finding their targets in Marcus Spivey's leg and abdomen.  Smith then pulled [a] gun of his own and, in a hail of gunfire, shot Malika Spivey in the knee.  Upon hearing the ruckus outside, Marcus['s] and Malika's mother,

Lorrane Huff, ran to the door of the family's home and saw Smith, whom she later identified in a photo array, running toward her shooting in the direction of the house. As neighborhood children ran past her to seek refuge, Huff dragged her screaming daughter inside while another bystander called the police. At the time of these events, Smith was seventeen years old.

At trial, the Commonwealth called, among others, Malika Spivey, Lorrane Huff, and numerous officers who responded to the scene as well as an expert in ballistics. Malika, who is hearing impaired, testified through a sign language interpreter that she was sure of Smith's identity because she remembered his face and a keloid scar on the right side of his neck. The Commonwealth did not call Marcus Spivey, however, and in its closing argument asserted that Marcus's testimony was not necessary as Marcus had been shot by Holeman rather than Smith and his testimony would have added nothing to that of the other witnesses. Smith elected not to testify and offered no other evidence in his defense. In his closing argument the prosecutor, in addition to discounting the need for Marcus Spivey's testimony, emphasized the certainty of Malika's testimony, stating[,] "She focused on the face, the face that brought death to her doorstep[.]" He argued in addition that such circumstances leave a lasting effect: "I have often heard it said that when you go through a traumatic event it has the effect on some people of triggering almost a recording session." Defense counsel objected to both references but uttered only the word "objection." Significantly, he did not offer a reason for the objection and did not request action from the trial judge to remedy the remarks to which he objected.

*Commonwealth v. Smith*, No. 1447 EDA 2007, at 2-3 (filed June 20, 2008) (unpublished memorandum). The jury convicted Smith on all charges, and the trial court subsequently imposed an aggregate sentence of imprisonment of 20 to 40 years.

On direct appeal, Smith raised two issues: prosecutorial misconduct during the closing argument, and merger of certain of his convictions. This

- 2 -

Court concluded that Smith had waived his claim of prosecutorial misconduct by failing to preserve it in the trial court. We further held that several of Smith's convictions should have merged for sentencing purposes, and remanded for re-sentencing. However, the illegal sentences did not affect the aggregate term, as they ran concurrently to other, affirmed sentences.

On January 21, 2009, the Supreme Court of Pennsylvania denied Smith's petition for allowance of appeal, and on November 4, 2009, Smith filed a *pro se* PCRA petition. Counsel was appointed to represent Smith, and an amended, counseled petition was filed. The PCRA court denied Smith's petition on April 4, 2014. This timely appeal followed.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v. Edmiston***, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, ***Edmiston v. Pennsylvania***, ___ U.S. ___, 134 S. Ct. 639 (2013). We review the PCRA court's legal conclusions *de novo*. ***See Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011).

On appeal, Smith raises three issues for our review. In his first two issues, Smith challenges the effectiveness of his trial counsel. In his final issue, he challenges the effectiveness of appellate counsel.

All of Smith's issues are premised on claims of ineffective assistance of counsel.

- 3 -

> [T]o prevail on his ineffectiveness allegations, Appellant must demonstrate that the underlying claim is of arguable merit; that no reasonable strategic basis existed for counsel's act or omission; and that counsel's error resulted in prejudice, or, in other words, that there is a reasonable probability that the outcome would have been different.

*Commonwealth v. Gibson*, 951 A.2d 1110, 1120 (Pa. 2008) (citation omitted).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Barnett*, ___ A.3d ___, ___, 2015 WL 4550107 at *3 (Pa. Super., filed July 29, 2015) (citation omitted). "In considering whether counsel acted reasonably, we look to whether no competent counsel would have chosen that action or inaction." *Id*. (citation omitted). We also consider whether "the alternative, not chosen, offered a significantly greater potential chance of success." *Id*. (citation omitted).

> [P]rejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. This probability is sufficient when it undermines confidence in the outcome of the proceeding. Counsel is presumed to have rendered constitutionally effective representation.

*Id*. (citation omitted).

In his first issue, Smith contends that the PCRA court erred in concluding that trial counsel was not ineffective for failing to file a post-sentence motion challenging the weight of the evidence supporting one of

- 4 -

his convictions for attempted murder. Specifically, Smith argues that it is undisputed that he did not shoot Marcus Spivey, and that the weight of the evidence at trial did not establish that he had conspired with Holeman's attempt to murder Spivey. Thus, Smith asserts, trial counsel was ineffective for failing to preserve this issue in a post-sentence motion.

Smith is correct in noting that trial counsel's failure to raise a weight claim in a post-sentence motion caused that issue to be waived. **See** Pa.R.Crim.P., Rule 607(a). Thus, we begin our analysis of whether trial counsel was ineffective for failing to do so by determining whether Smith's underlying weight claim has arguable merit. Our standard of review applicable to a challenge to the weight of the evidence is as follows.

> [A] verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court. … The role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.
>
> Significantly, in a challenge to the weight of the evidence, the function of an appellate court … is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's

denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009) (internal citations and quotation marks omitted). In the context of a claim for ineffectiveness of trial counsel for failing to properly raise the claim before the trial court, we review the PCRA court's exercise of discretion based upon the record. ***See Commonwealth v. Luster***, 71 A.3d 1029, 1049 (Pa. Super. 2013).

Here, the PCRA court found this claim waived, concluding that Smith's 1925(b) statement was insufficiently specific to allow it to address the issue. The relevant portion of Smith's statement states: "The PCRA court erred by denying appellant post conviction relief because trial counsel was ineffective because he did not file a post-sentence motion and preserve the issue that his conviction for attempted [murder] was against the weight of the evidence." The PCRA court is correct in noting that this statement is too vague to allow for review. ***See Commonwealth v. Seibert***, 799 A.2d 54, 62 (Pa. Super. 2002). Thus, we find this claim waived. [1]

_____

[1] In any event, Smith's claim that trial counsel was ineffective for failing to raise a weight of the evidence claim is an extraordinarily difficult claim to prove has arguable merit. "A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-1275 (Pa.
*(Footnote Continued Next Page)*

Next, Smith argues that counsel was ineffective for failing to preserve prosecutorial misconduct during closing arguments as an issue for purposes of direct appeal. We note that while the direct appeal panel found the issue of prosecutorial misconduct waived pursuant to trial counsel's failure to request a remedy or adequately identify the basis of his objection, the panel explained why, if they could address the claim on the merits, it has no merit:

> Nevertheless, even if we were able to reach the merits of Smith's assertions, the record offers no basis for the relief he requests. "Our standard of review for a claim of prosecutorial misconduct is limited to 'whether the trial court abused its discretion.'" ***Commonwealth v. Harris***, 884 A.2d 920, 927 (Pa. Super. 2005) (quoting ***Commonwealth v. DeJesus***, 787 A.2d 394, 407 (Pa. 2001)). We focus accordingly upon whether the prosecutor's remarks or actions denied the defendant a fair trial. ***Harris***, 884 A.2d at 927. This standard is relatively stringent. ***See id***.

> > Not every unwise remark on a prosecutor's part constitutes reversible error. … Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward Appellant so that they could not weigh the evidence objectively and render a true verdict.

> ***Id***. Significantly, prosecutorial misconduct is not shown where the comments at issue were based on the evidence or inferences reasonably deducible from it. ***See id***. Counsel's remarks are not evidence in themselves and counsel are allowed considerable latitude in arguing their cases to the jury. ***See Commonwealth***

_(Footnote Continued)_ _____

Super. 2013) (citation and internal quotation marks omitted). Our review of the record leads us to conclude that it is highly unlikely that any jurist would be shocked by the verdict returned in this case.

*v. Baez*, 720 A.2d 711, 729 (Pa. 1998). If, when taken in context, counsel's remarks amount only to "oratorical flair," the requisite showing had not been made and the trial court is under no obligation to take corrective measures. *See Harris*, 884 A.2d at 927.

In this case, the first reference [Smith] challenges is nothing more than oratorical flair. *See* N.T., 1/25/07, at 102 ("I have often heard it said that when you go through a traumatic event it has the effect on some people of triggering almost a recording session."). Contrary to Smith's assertion, nothing in the statement purports to scientific fact; indeed, by its plain language, the statement labels itself as the prosecutor's personal reflection on facts in evidence. Malika Spivey testified that she distinctly recalled the defendant's face and made reference to the keloid scar on the right side of his neck. Moreover, notwithstanding Smith's assertion of scholarly opinion in other disciplines, Brief for Appellant at 13, the prosecutor's reflection remains consistent with applicable decisions of our appellate courts. *See Commonwealth v. Edwards*, 762 A.2d 382, 391 (Pa. Super. 2000) (quoting *Commonwealth v. Derrick*, 469 A.2d 1111, 1121 (Pa. Super. 1983) ("Whenever the victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion."). *Accord*, *Commonwealth v. Butler*, 512 A.2d 667, 672 (Pa. Super. 1986). Accordingly, we find no basis upon which to conclude that the statement amounts to prosecutorial misconduct.

In the second reference Smith challenges, the prosecutor sought to diminish the importance of any testimony that may have been offered by the second victim, Marcus Spivey. The prosecutor's statement reads as follows:

> To say, well, he should go free because Marcus didn't show. Use your common sense. If Marcus is over here being shot at by the light-skinned individual that has been identified, who do you think he's going to be focused on? This guy who's in front shooting him or the one that is running across the street shooting his sister?

> We don't need Marcus here. Marcus may have been the target for everything, but Marcus, his focus is on someone who has already been dealt with.

> N.T., 1/25/07, 111-12. We find nothing even remotely prejudicial in these statements. In point of fact, they amount to nothing more than fair commentary on evidence of record. Other witnesses, including Malika Spivey and Lorrane Huff, testified specifically concerning the respective positions of both the victims and their assailants. The prosecutor's suggestion, based upon that evidence, that Marcus Spivey was likely focused on his own assailant merely recognizes the testimony of those other witnesses and draws reasonable inferences that the jury, based upon human experience, could readily dissect and understand. Accordingly, we find no basis upon which to characterize the prosecutor's statements as misconduct.

*Smith*, at 7-9.

It is true that the quoted language constitutes *dicta*, but we find its reasoning correct and adopt it fully as our own. We therefore conclude that Smith has failed to establish that the underlying claim has arguable merit, and thus, has failed to establish his claim for ineffective assistance of trial counsel. Smith's second issue on appeal merits no relief.

In his final issue, Smith contends that appellate counsel was ineffective in failing to raise the issue of the sufficiency of the evidence supporting his conviction for attempted murder of Marcus Spivey. Specifically, Smith claims that appellate counsel should have argued that the evidence at trial was insufficient to support a finding that he had the specific intent to kill Marcus Spivey. We once again conclude that the PCRA court was correct in concluding that Smith could not establish the arguable merit of the underlying claim.

In reviewing a challenge to the sufficiency of the evidence, "[w]e must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007). Our scope of review is plenary. *See Commonwealth v. Weston*, 749 A.2d 458, 460 n.8 (Pa. 2000). We may not weigh the evidence and substitute our judgment for the fact-finder's, as the fact-finder solely determines the credibility of witnesses and is free to believe all, part or none of the evidence submitted. *See Cooper*, 941 A.2d at 662. The Commonwealth may sustain its burden of proving every element of an offense by means of wholly circumstantial evidence. *See Commonwealth v. Garland*, 63 A.3d 339, 345 (Pa. Super. 2013).

To sustain an attempted homicide conviction the Commonwealth must prove the accused has commited an act that is a substantial step towards the commission of the crime with a specific intent to kill. *See Commonwealth v. Dale*, 836 A.2d 150, 152-153 (Pa. Super. 2003). "[T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts[.]" *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008) (citation omitted). The intent necessary for establishing attempted murder is a specific intent to kill. *See Commonwealth v. Geathers*, 847 A.2d 730, 735-736 (Pa. Super. 2004).

The specific intent to kill need not be confined to the intended victim. "The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." *Commonwealth v. Thompson*, 739 A.2d 1023, 1029-1030 (Pa. 1999) (citation omitted). Thus, if a defendant intended to kill one victim by shooting in the victim's direction, the intent to kill is transferred to the innocent bystander who the defendant mistakenly shot. *See Commonwealth v. Jackson*, 955 A.2d 441, 445-446 (Pa. Super. 2008).

Here, the evidence established that Smith unleashed a hail of gunfire while Holeman and Marcus Spivey were engaged in a dispute. The doctrine of transferred intent permitted the fact-finder to infer that Smith intended to kill both Marcus, whom Smith did not shoot, and Malika, whom Smith did shoot. The reckless nature of the high volume of shots fired allowed the fact-finder to further infer that Smith was not carefully aiming warning shots or attempting to merely injure his target, and that Smith intended to kill both Marcus and Malika. We therefore conclude that Smith cannot establish the arguable merit of his underlying sufficiency of the evidence claim. As a result, he has not established that appellate counsel was ineffective, and his final issue on appeal merits no relief.

Order affirmed. Jurisdiction relinquished.

Judge Mundy joins the memorandum.

Judge Jenkins concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2015